IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

CASE NUMBER 2:24-cv-4357-DCN-MGB

**Morris Beach Hutson**

**Plaintiff**

**VS**

**Defendants**

<u>**JURY TRIAL DEMANDED**</u>

# COMPLAINT
**Willful Entwinement** of Plaintiff's 14th
**Amendment of the Constitution via
EXTRINSIC FRAUD On the Courts
And the use of Unenforceable, void
Agreements to Defraud with
No Probable Cause,**
No meeting of the minds,
Contract Fraud, Lack of Disclosure,
Concealment and Conspiracy,
Abuse of process and Perjury
Fake evidence, Breach of Contract

**Thomas Harper individually
Attorney Thomas Harper Esq.
Betty Elizabeth Temple individually
CEO Attorney Betty Elizabeth Temple Esq
Charles Summerall individually
Attorney Charles Summerall, Esq.
Womble Carlyle Sandridge & Rice LLP Law Firm
Womble Bond Dickinson Law Firm
Attorney Keith Vaughan
Newly Elected CEO, Merrick Benn**

**R. Wayne Byrd individually & was CEO Attorney Wayne Byrd Esq. C/O Attorney Melody
Breeden with Turner Padget Graham & Laney
Attorney Melody Breeden
John Wilkerson individually
Attorney John Wilkerson, Esq
Turner Padget, Graham & Laney P.A.
Carlyle Richardson Cromer individually
Carlyle Richardson Cromer, Esq.
Pierce Campbell individually
CEO Attorney Pierce Campbell. Esq;**

1

**Timothy J. Newton individually**
**Attorney Timothy J. Newton, Esq.**
**John Grantland Individually**
**Attorney John Grantland, Esq.**
**Attorney John Grantland Esq.**
**Murphy Grantland Law firm**
**J.R. Murphy individually**
**Attorney J.R. Murphy, Esq.**

**Christian Stegmaier individually**
**Attorney Christian Stegmaier, Esq.**
**Laura Baer individually**
**Attorney Laura Baer, Esq.**
**Collins and Lacy**

**Frank J. Gordon individually**
**Attorney Frank J. Gordon, Esq.**
**Millberg Gordon Stewart PLLC.**

**Richard U. Clark individually C/O Attorney Michael Crowder**
**Steven Lovell Individually**
**TLC Holdings, LLC**
**Ocoee, LLC**

**Penn America Insurance Company**
**Global Indemnity Insurance Company**

**Paul Weissenstein individually**
**Attorney Paul Weissenstein, Esq**
**Paul Weissenstein Law Firm**
**Attorney Raymond Steven Kropski Esq**
**Earhart Overstreet, LLC**

**Attorney William Johnson**

**Defendants**

---

**Note: This case is not about the 1983 Statute and involves no Defendant employed by the State of South Carolina or any other government, including the United States of America, nor is this complaint suing any governmental office of color.**

**Rule 26.01 Interrogatories attached, and Summons and Complaint Proof of Service attached.**

**Thomas Harper individually**
**Attorney Thomas Harper Esq.**
**Betty Elizabeth Temple individually**
**Attorney Elizabeth Temple Esq**
**Charles Summerall individually**
**Attorney Charles Summerall, Esq.**
**Womble Carlyle Sandridge & Rice LLP Law Firm**
**Womble Bond Dickinson Law Firm**
**Attorney Keith Vaughan**

**R. Wayne Byrd individually, Attorney Wayne Byrd Esq. C/O Attorney Melody Breeden**
**Attorney Melody Breeden**
**John Wilkerson individually**
**Attorney John Wilkerson, Esq**
**Turner Padget, Graham & Laney P.A.**
**Carlyle Richardson Cromer individually**
**Carlyle Richardson Cromer, Esq.**
**Pierce Campbell individually**
**Attorney Pierce Campbell**

**Timothy J. Newton individually**
**Attorney Timothy J. Newton, Esq.**
**John Grantland Individually**
**Attorney John Grantland, Esq.**
**Attorney John Grantland Esq.**
**Murphy Grantland Law firm**
**J.R. Murphy individually**
**Attorney J.R. Murphy, Esq.**

**Christian Stegmaier individually**
**Attorney Christian Stegmaier, Esq.**
**Laura Baer individually**
**Attorney Laura Baer, Esq.**
**Collins and Lacy**

**Frank J. Gordon individually**

3

1.    **Venue:**  This case occurred in this Court's district, Charleston and Columbia, South Carolina, where most Defendants work, live, or participated in the fraud.  The matter of controversy exceeds $33,000,000.00 million in actual damages, consequential, incidental, special, punitive damages, and torts

2.    **History:** Sellers Richard Clark, Steven Lovell, TLC Holdings, LLC, and their named lawyers prepared the fraudulent <u>Lease Purchase Agreement,  the Retail Membership Agreement, the Settlement Agreement, and the Consent Order "Agreements,".</u>

The agreements allowed Plaintiff the right to buy 108 acres of waterfront property in Sumter/Clarendon County, South Carolina, for a purchase price of six million dollars. The Lease Purchase Agreement required the Plaintiff to close within 12 months from date of execution, which was December 26, 2011.

However, the Lease Purchase Agreement was unenforceable, void, and dead the minute it was executed because neither the Seller nor the Plaintiff could legally honor the Lease Purchase Agreement caused by the (740) individual two-lifetime family leases that created a huge defective title.  Neither the sellers nor their attorneys disclose this information to Plaintiff.

3.     Unknowingly, Plaintiff executed their prepared Lease Purchase Agreement, had a title search performed on the 108 acres, and worked on getting approvals for a new subdivision with about 200 small new cabins to be sold via current closings.

4.     Plaintiff believed there was a complete meeting of the minds; instead, The Lease Purchase Agreement was only a premeditated plot to defraud and coerce Plaintiff into buying the defunct Big Water Resorts business having 740 family memberships for use of the 108 acres for up to two lifetimes.

5.     Instead, the Sellers and their attorneys intentionally did not record the 740 family membership Leases, as required by law, "sole right of use" for up to two lifetimes on the same 108 acres of property Plaintiff was buying. This failure to record and concealment caused Plaintiff not to have a clear nor recognizable marketable title.

Now, Plaintiff had a defective title he was unaware of that prevented Plaintiff from ever closing the 108-acre property due to the 740 family memberships who had bought 4 years before Plaintiff's arrival in South Carolina.

6.     Sellers Richard U. Clark, Steven Lovell, and TLC Holdings pre-collected $5,000.000 of sales from the 740 family members and deposited the same into BWR since the individual leases were purchased between Big Water Resorts and the family memberships.

7.      Once the lease sales ( approx. 5 million were pre-collected ) from the Family Members, Sellers Clark, Lovell, and TLC Holdings quietly and wrongfully took the $5 million out of Big Water Resort and kept it for themselves, instantly leaving Big Water Resort defuncted with no money to run the BWR for 70 years.  BWR was broke and unable to honor the long-term lease agreements.

No Defendant revealed the $5 million illegal transfer or theft to Plaintiff or the Family Memberships. Sellers nor their attorneys disclosed that Big Water Resorts had lost about $300,000 annually for the past (8 to 10) years, and there was no way to fix the $300,000 annual loss in the future.

# NOTE: in the Class-action federal suit

a.  Plaintiff cites paragraphs 25 through 28 pages (4 and 5) in Richardson, Patrick, Westbrook & Brickman, LLC, Brady R. Thomas, Terry E. Richardson, Christopher Moore, Finkel Law Firm, LLC, William R. Padget Class Action complain that they won filed on April 22, 2014, reads as follows: "Defendants Clark, Thigpen and Lovell acted for their own independent purpose to the detriment of Big Water Resort, LLC and the class by failing to enter into a long term lease or contract between Big Water Resort, LLC and TLC Holdings, LLC to ensure that Big Water Resort, LLC and the class had guaranteed access to the property."

11

b. " Upon information and belief, Defendants Clark, Thigpen, and Lovell, to the detriment of Big Water Resort, LLC and for their personal gain, stripped Big Water Resort, LLC of the funds paid by members for membership and left Big Water Resorts, LLC without any operating capital.   Such operating capital was necessary for Big Water Resort, LLC to continue to operate as a private club".

c. Paragraph 68, page (9): "Upon information and belief, there is an absence of corporate records justifying the siphoning of membership dues paid by the class and taken by Defendants Clark, Thigpen, and Lovell".

d. Paragraph 28, page (4),  "Upon information and belief, Defendant TLC Holdings, LLC knowingly took the membership funds from Big Water Resort, LLC, built minor improvements on its property, and then marketed its property for sale to third parties who would not be obligated to operate the club privately or on the property".

e. Paragraph 76. Page (11), "Defendants Clark, Thigpen, Lovell and Big Water Resort, LLC violated S.C. Code Ann. 27-32-80 by leasing or otherwise transferring the accommodations and facilities at Big Water Resort to M.B. Hutson without the capital accounts and funding from memberships dues necessary to operate the resort as a private club, and this transfer substantially affected the rights of the Plaintiffs and all class members who were purchasers f the vacation time sharing plan as evidenced by the conversion of the club from private members-only club to a public facility".

8.    Now, the Plaintiff understands why the Sellers wanted the Plaintiff to buy Big Water Resorts quickly. They knew that BWR would collapse permanently and needed a scapegoat to bear the wrongs and legalities Sellers would have to face, including jail. No disclosure of truth was dare revealed to Plaintiff even after more and more ( complicit ) attorneys became involved.

9.  South Carolina Law:  to give notice to third persons, any lease or agreement for the use or occupancy of real estate shall be recorded in the same way as a real estate deed. "(SC #27-33-30)."

10.    The Lease Purchase Agreement prepared by Seller Defendants Richard U. Clark, Jimmy Lovell, TLC Holdings, and their Defendants lawyers, Attorney Thomas Harper, Esq, Womble Carlyle Sandridge & Rice, LLP and Womble Bond Dickinson intentionally prepared the fraudulent Lease Purchase Agreement, called the Agreement, where Plaintiff would have to purchase the Family Memberships and duty to honor the leases for up to (70) years, which created a 22-million-dollar duty.

a.  Sellers failed to disclose to Plaintiff that BWR was losing 300,000 yearly. If one multiplies 300,000 or more times 70 years equals 22 million dollars or more to include two lifetimes.

13

11.    The plaintiff was doomed but did not understand since the Defendants would not dare reveal the fraudulent truth to the Plaintiff before executing the Agreement.

12.    Unknowingly to Plaintiff, the Lease Purchase Agreement was unenforceable, void, and worthless due to a huge defective title. The plaintiff paid the Sellers about $85,000 in cash for the right to buy, which was never refunded.

13.    Sellers and their attorneys had a legal duty to advise the plaintiff as to the truth but intentionally did not. All other complicit Defendant lawyers representing Penn America, Global Indemnity Plaintiffs insurer, had the same duty since those lawyers were directly involved or learned of the fraud during depositions during the class-action lawsuit filed by the family members.

14.    **Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding**

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to the Professional's fraud claim against Kennedy, it would be premature to dismiss the Professional's unjust enrichment claim against the lender. So Defendants'...

15.    The plaintiff was doomed but did not know since no disclosures existed.

16.    **Smith v. Coldwell Banker Real Estate Corp.**

CASE NO. 4:05cv166 (N.D. Miss. Sep. 14, 2007)

395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). A person is bound by the contents of a contract he signs, whether he reads it or not. Washington Mutual Finance Group, LLC v. Bailey, 364 f.3d 260, 262-63 (5th Cir. 2004). Contract principles require a meeting of the minds for an agreement to be valid and prohibits parties from engaging in fraud to induce signature. Lang, 321 F.3d at 538. The allegations of the plaintiffs do not show there was fraud in the inducement of the arbitration agreement. There are only general assertions that the plaintiffs were unaware that they

**17.** *Reid v. Graybeal*

437 F. Supp. 24 (W.D. Okla. 1977)  Cited 5 times

Oklahoma law is clear that when the minds of contracting parties fail to meet because of a mutual mistake which goes to the essence of the agreement, there is no consent and the contract is unenforceable. Percival Const. Co. v. Miller Miller Auctioneers, 532 F.2d 166 (Tenth Cir. 1976). The case of B.L. Ivey Construction Co. v. Pilot Fire and Casualty Co., 295 F. Supp. 840 (N.D.Ga. 1968), though not

*Coultas v. Payne*

Civ. No. 3:11-cv-45-AC (D. Or. Dec. 12, 2011)  Cited 2 times

by an officer of the court." In re Intermagnetics America, Inc., 926 F.2d 912, 916 (9th Cir. 1991). The court should base its analysis "not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process[.]" Id. at 917 (citing Hazel-Atlas Glass, 322 U.S. at 246), Significantly, "[t]here is no statute of limitations for fraud on the court."Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 640 (N.D. Cal. 1978) (citing C. Wright & A. Miller, Federal Practice and Procedure § 2870 at 250 (1973))

**18.** *Fifth Third Bank v. Lincoln Financial Securities Corp.*

CIVIL ACTION NO. 4:06CV-122-M (W.D. Ky. Aug. 17, 2009)  Cited 1 times

his brokerage account. Based on its claim of mutual mistake, Lincoln Financial urges the Court to rescind the contract or reform the contract to recognize a reduction in the brokerage account value by $2.8 million based on Schneider's fraud in that amount. When parties enter into a contract under a mutual mistake,

the contract is not enforceable. Hinton Hardwoods, Inc. v. Cumberland Scrap Processors Transport, 2008 WL 5429569, *4 (Ky.Ct.App. December 31, 2008). "`A mutual mistake is one in which both parties participate by each laboring under the same misconception.'" Id. (quoting Reiss v

19.    South Carolina Law: to give notice to third persons, any lease or agreement for the use or occupancy of real estate shall be recorded in the same way as a deed of real. Estate. (SC #27-33-30)."

20.    Lawyer's Oath South Carolina Appellate Court Rule 402 (k) SCRPC p. 1, Il. 10-1: "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court but also in all written and oral communications."

a.      **FEDERAL COURT JURISDICTION**: The United States government, the Constitution or federal laws, or controversies between states or between the U.S. government and foreign governments.

b.      In Plaintiff's case, the Defendants violated his 14th Amendment of the Constitution, preventing Plaintiff's case from being heard regarding Plaintiff's right to have the 108 acres and being illegally evicted. Defendants were responsible for revealing all fraud they had created to the Federal, Appellate, and State Courts and to Plaintiff.  No Defendant revealed.

c.      The right not to have been wrongfully and falsely evicted, land fraud, contract fraud, extrinsic fraud in the Federal, Appellate, and State Courts, forcing Plaintiff into bankruptcy, and no probable cause were intertwined into one intentional plot by the premeditated dishonest Defendant Sellers, Penn America

Insurance Company, Global Indemnity Insurance Company, who was legally required to represent their insured "Plaintiff" and their Attorneys, who were complicit with each other in causing severe financial and emotional harm to the plaintiff intentionally.

D.     No probable cause existed regarding the Plaintiff being sued or evicted. Defendants had no authority to sue nor take his deposition multiple times because they had purposely defrauded the Plaintiff via the Lease Purchase Agreement to lure the Plaintiff on the property for the long term and lured the Plaintiff to buy the defuncted BWR at the signing of the Lease Purchase Agreement via fraud. No disclosures that the Lease Purchase could not be complied with by either the dishonest Sellers or the innocent Plaintiff.

e.     The Defendants never revealed their premeditated plot and plan to anyone, including Judges, Courts, or the Plaintiff.

Sellers and their attorneys simply prepared a

fraudulent Lease Purchase Agreement, causing Plaintiff to

believe he could develop the 108 acres in Sumter/Marion

County, South Carolina when he could not due to 740 family

memberships for sole right of use.

f.    Defendants were aware they could never honor the Lease

Purchase Agreement due to the long-term (70) year multiple

leases that created the defective title. It was a fraud to get the

unknowing Plaintiff to buy the defuncted BWR, which had a

hidden 22-million-dollar duty.

21.    Unknowingly to the Plaintiff, Big Water Resorts was a defunct company with a

22-million-dollar hidden duty concealed by the Sellers and their Defendant attorneys.

The Sellers and their lawyers concealed this critical fact from the Plaintiff.

a.    Plaintiff defaulted within the first year of the fraudulent and void Lease Purchase Agreement because the Lease Purchase required Plaintiff to pay between $8,000 and $10,000 each month until closing and spend millions of dollars on upgrades before closing.  A closing that was legally impossible. Sellers and their attorneys understood that Plaintiff could never buy the property due to their executing up to ( 70 ) year long-term leases with 740 family members while deliberately failing to record such two-lifetime sole right-of-use leases as required by law.

South Carolina Law: to give notice to third persons, any lease or agreement for the use or occupancy of real estate shall be recorded in the same way as a deed of real. Estate. (SC #27-33-30)."

b.    This led to preparing other fraudulent Agreements. Plaintiff had bought the BWR, and the Sellers understood they could never sell Plaintiff the 108 acres even though Plaintiff was never told the truth about the Agreements.  Sellers needed me off the property since Plaintiff was now responsible for honoring up to 740 two lifetime lease agreements costing Plaintiff $325,000.00 every 12 months, in the negative, for (70) years to keep the BWR gates opened each year while Plaintiff could never develop the 108 acres due to defective title.  This was a preplanned illegal trap that Sellers and their attorneys had gotten Plaintiff into.

c.    I remind the Court that even though Plaintiff was responsible for honoring the long-term leases for (70) years, Sellers refused to execute a lease

19

agreement on the 108 acres so Plaintiff could try to honor the huge obligations of BWR like they conned Plaintiff into buying, but they refused. This lack of action placed the Plaintiff helpless.

d.    These fraudulent actions left Plaintiff with no property like the 740 lease agreements called for to honor. The plaintiff found himself defrauded and with huge financial obligations, with no way to pay nor any legal right to use the 108 acres to try to honor the long-term lease agreements. The plaintiff had been taken and defrauded while being fraudulently sued and evicted.

e.  Plaintiff reminds this court this case is not about the 1983 rule.

22.    The Plaintiff's 14th Amendment was violated, preventing his case from being heard by every State and Federal Court, disregarding the total lack of no probable cause rule and the use of unenforceable void and worthless contract agreements, presented as valid evidence, contract fraud, and extrinsic fraud on the courts, judges, Plaintiff and abuse of authority, no hearing regarding possession rights to the 108 acres and illegally evicting Plaintiff **all combined into one entwined illegal action.**

In addition, all Defendants committed perjury, fraud, and lack of disclosure.

20

23.    **Cooper v. City of Chester**

**CIVIL ACTION NO. 11-5381 (E.D. Pa. Mar. 11, 2013)**
**This rule is established in federal law, and qualified immunity is**
**inapplicable to Plaintiff's federal malicious prosecution claim. See, e.g.,**
**Mahoney v. Kesery, 976 F.2d 1054, 1061 (7th Cir. 1992); Sanders v. English,**
**950 F.2d 1152, 1162-64 (5th Cir. 1992); Barlow v. Ground, 943 F.2d 1132,**
**1136-37 (9th Cir. 1991): Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir.**
**1990).**

24.  The plaintiff recognized now, in 2024, that Attorney Thomas Harper used illegal,

unenforceable agreements and extrinsic fraud on December 10th, 2013, when he filed

in the Federal Bankruptcy Court to have Plaintiff's case kicked out of reorganization.

Harper used the dead and unenforceable Lease Purchase Agreement to do so.

25.    Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is
unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of
Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may
be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472
(N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it
would be premature to dismiss Professional's unjust enrichment claim against the lender. So
Defendants'...

26.    The plaintiff had a title search done on the 108 acres. Sellers and their attorneys conceal

they did not record the (740) family membership leases for "sole right of use" up to (70) years as

required by State Law.

27.     Plaintiff reminds this Court that no release is binding or enforceable if there is fraud,

extrinsic fraud on the Courts, using unenforceable evidence, and

28. **Jurisdiction**: "The United States District Court is a Federal Trial Court. Federal Courts have "jurisdiction," meaning the authority to hear only certain types of cases. As in all federal trial courts, a Federal District Court is generally authorized only to hear cases that fall into these four categories":

29. **Diversity Jurisdiction** - does not apply since most of the Defendants live in South Carolina, where Plaintiff lives.

30. **"Those that deal with a question involving the United States Constitution and federal law."**

31. **Applies**—So, the Federal Question is alive and applies, for many questions about the violation of the Plaintiff's 14th Amendment exist, extrinsic fraud preventing the Plaintiff from having his case heard, fraudulent evidence used to support the Defendant's fraudulent position without probable cause. The need to hear about possession rights of property, contract fraud, abuse of authority, and being illegally evicted by using fraud. This case demands a federal jury.

(1) the plaintiff's ownership or right to possession of the property was never heard. Defendants blocked Plaintiff's ability to have his case heard via extrinsic fraud on the Courts by filing unenforceable fraudulent filings and the abuse of authority in Federal Court. — this applies

22

(2) the defendant's conversion by a wrong act or disposition of the plaintiff's property rights was never heard. —this applies

(3) damages suffered by the plaintiff were never heard. —this applies.

31.    "Those that have a claim related to Federal law ( as opposed to state law, unless there is a state law claim related to a Federal claim being made, in which case the court may agree to consider it ); Warth v. Seldin,  422 U.S. 490, 499 ( 1975 ); see U.S. v. Hays, 515 U.S. 737, 743 ( 1995 )."

32.    "Those that involve the United States as a party, whether as a plaintiff or defendant." Does not apply.

33.    Those that involve a dispute among residents of different states with an amount in controversy exceeding 75,000.00 dollars".  Most Defendants live in Plaintiff's South Carolina.  Does not apply.

34.    This case concerns questions about Defendants violating Plaintiff's 14th Amendment law

( 1 ) to fraudulently prevent Plaintiff's case from being heard.

( 2 ) to prevent the Federal and State Courts from discovering the Defendants' hidden fraud by using unenforceable dead contract agreements as their fraudulent PRIME evidence, preventing the Plaintiff's case from being heard.

( 3 ) use of extrinsic fraud upon the Courts.

( 4 ) no probable cause and contract fraud.

( 5 ) obstruction of justice.

( 6 ) need a jury trial to determine Punitive Damages.

( 7 ) need a jury trial to determine Tort damages.

( 8 ) right to have possession issues of the 108-acre property heard, and being illegally evicted must be heard by a jury.

35.    A federal Judge and Federal jury need to answer many questions, including damages and proper restitution after the jury has heard the evidence.

36.    **Res Judicata is barred due to extrinsic fraud. The Lease Purchase Agreement was unenforceable, void and dead.**

37.    How Plaintiff's 14th Amendment was violated intentionally.

38.    How Extrinsic fraud was used should be heard by a jury.

24

39.    How unenforceable, void, and dead-on-arrival contracts/agreements were intentionally used to prosecute the Plaintiff by suing, evicting illegally, filing for sanctions in Federal Court without probable cause, conspiring and fraudulently stealing money from the Plaintiff's insurance companies without probable cause, defrauding the Federal Bankruptcy Judge Waites and his Federal Trustee, and intentionally telling and filing multiple lies to Federal, Appellate, and State Judges to hide/cover-up Defendants wrongful actions such as no probable cause, extrinsic fraud on the Courts, use of unenforceable and void Lease Purchase Agreement.

40.    **Federal Rule 8 (a).** General Rules of Pleading

Primary tabs

(a) Claim for Relief. A pleading that states a claim for relief must have:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader has the right to relief; and

(3) a demand for the relief sought, which may include relief or different types of relief.

41.    This case concerns questions about Defendants violating Plaintiff's 14th Amendment law (1) to fraudulently prevent Plaintiff's case from being heard.  (2) to prevent the Federal and State Courts from discovering the Defendants' hidden fraud by using unenforceable dead contract agreements as their only valid evidence. (3) use of extrinsic fraud upon the Courts. (4) no probable cause and contract fraud. (5) obstruction of justice. **(6) right to have PLAINTIFFS CASE HEARD FOR**

25

**POSSESSION OF RIGHTS AND A FRAUDULENT AND ILLEGAL**

**EVICTION. Res Judicata is barred due to extrinsic fraud**, abuse of authority, and filing invalided evidence to the Federal Courts must be heard by this Court. Using fraudulent, unenforceable contracts and intentional fraud prevented the Plaintiff from having his case heard, causing this case to be ripe for the hearing.

42. **Jurisdiction.** This case occurred in Marion County, where the 108 acres are located and where most fraudulent actions occurred. Most Defendants live and work in this area of South Carolina. Jurisdiction is proper.

Issues such as the plaintiff's case not being heard by this Federal Court regarding possession of the 108 acres, the illegal eviction, and others were obstructed from being heard by the Defendants.

In addition, contract fraud, abuse of authority, extrinsic fraud on the Court, misrepresentation, Fraudulent filings, conning the Federal Judges, and more need to be presented to a Judge and Federal Jury.

43. Plaintiff has been severely damaged financially, physically, and mentally drained, suffering from depression, loss of income, and permanently damaged over a period of ( 13 ) years. This case must go to a Federal Jury. This Pleader has the right to relief via a jury trial. This case is genuine and not frivolous.

26

44.    More History;

45.    Thomas Harper individually / Attorney Thomas Harper, Womble Carlyle Sandridge & Rice, Womble Bond Dickinson, Attorney Keith Vaughan prepared all four fraudulent agreements: the Lease Purchase Agreement, the Retail Membership Agreement, the Settlement Agreement, and the Consent Order "Agreements". The agreements were cloaked with fraud simply because neither the Sellers nor the Plaintiff could legally comply with the fraudulent agreements. Seller and Seller's attorneys prepared the agreements, intentionally understanding that Seller could never close on such fraudulent agreements, nor could Plaintiff. This is fraud on the Sellers and fraud on the attorney who prepared to agreements.

46.    All the contractual agreements, the fraudulent Lease Purchase Agreement, Retail Membership Agreement, settlement agreement, and Consent Order "Agreements" were connected to the fraudulent "lease-purchase agreement" since none of the agreements could be legally complied with due to the known gross defective title created by Sellers and their attorneys. In addition, none of the agreements provided a meeting of the minds, for they all were fraudulent.

47.    Harper also filed with the Federal Bankruptcy Court the fraudulent Lease Purchase agreements he and the Sellers, Richard Clark, Steve Lovell, and TLC Holdings, understood that the four agreements could never be legally complied with

27

by either Sellers or Plaintiff due to the 70-year "sole right of use" for 740 family membership Leases executed four years before Plaintiff's arrival allowing two-lifetime sole rights of use to each family membership on the 108 acres.

48.     The plaintiff will submit exhibits that prove the Plaintiff's allegations; Turner Padget, Collins Lacy, Murphy Grantland, and Attorney Frank Gordon filed many fraudulent documents, deceiving both the courts and the plaintiff.

49.     All Attorneys used unenforceable agreements, no probable cause, failing to disclose, hiding the unenforceable and void agreements as valid when they were not, extrinsic fraud, using the unenforceable agreements, contract fraud, and abuse of authority, violating Plaintiff's 14th Constitutional rights, all intertwined to defraud intentionally Plaintiff, Judges and Courts.

50.     Betty Elizabeth Temple individually/ Womble Bond Dickinson's CEO Betty Elizabeth Temple CEO, Attorney Keith Vaughan, scrutinized all activity that Womble Bond Dickinson conducted and did not reveal to the Federal Courts and State Court Tribunals.

        Womble Bond Dickinson intentionally failed to disclose the extrinsic fraud, abusive authority, and use of an unenforceable Lease Purchase Agreement to deceive Court decisions and judges to beat the Plaintiff to destroy him financially and doom him.

51.    In addition, they did not report contract fraud, failed to disclose that no probable cause to sue Plaintiff existed, abused authority, and used unenforceable and void evidence that was dead on arrival yet pretended all evidence was binding to guarantee all wins, which was unlawful fraud for greed.

52.    Attorney Charles Summerall also assisted Harper by filing false documents in The Honorable Judge Waits bankruptcy Court ( they are attached in numbered exhibits ) using the unenforceable, void, and fraudulent Lease Purchase Agreements, fraudulent Settlement Agreement for it required the Plaintiff to buy property with defective title to convince Judge Waits to throw out the Plaintiff's filing for reorganization to achieve the fraudulent eviction of the Plaintiff. This caused Plaintiff continued harm for 9 years of damages, including loss of income for 9 years, including senior retirement loss.

       This Plaintiff has fought daily for 9 years or longer, trying to get restitution and justice. I Pray this Honorable Judge Cherry comes to my aid, for I have spent almost 3 months preparing this complaint.

53.    Attorney Thomas Harper was aware that the Lease Purchase Agreement and Settlement Agreement he prepared could not be legally complied with due to the 70-year lease with 740 family memberships for "sole right of use," but he still used the

unenforceable contract agreements in Federal and State Court supported by Sellers

Richard Clark, Steven Lovell, and TLC Holdings LLC.

**54.    Rule 8.3: Reporting Professional Misconduct**

A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the proper professional authority.

a. All Defendant attorneys have constantly used extrinsic fraud in the Courts

while hiding their wrongdoings, and all Defendants know that they are using fraud.

They file misrepresenting evidence as if it is valid evidence when they know it is wrong

and illegal. Defendants are merely conning the Federal Judges, Appellate, and State

Courts.

**55.    _Reeves v. Town of Cottageville_**

No. 2:12-cv-02765-DCN (D.S.C. Aug. 26, 2014)  Cited 7 times

Code of Professional Responsibility sets forth the ethical standards for attorneys who practice in this district. See Local Civil Rule 83.1.08 DSC, RDE Rule IV(B) ("The Code of Professional Responsibility adopted by this Court is the South Carolina Rules of Professional Conduct . . . adopted by the Supreme Court of the State of South Carolina . . . ."). "Violation of any provision of the South Carolina Rules of Professional Conduct" qualifies as sanctionable misconduct. Id. Rule V(H)(2); see also Clinton Mills, 687 F. Supp. 226, 228 (D.S.C. 1988) ("It is the court's responsibility to

**56.    Clinton Mills, Inc. v. Alexander Alexander, Inc.**

687 F. Supp. 226 (D.S.C. 1988)  Cited 20 times

to the judiciary for resolution. Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975); Greenebaum-Mountain Mortgage Co. v. Pioneer National Title Insurance Co., 421 F. Supp. 1348, 1351 (D.Colo. 1976). Under District Court Local Rules 2.08 and 2.09(h)(i)(2), the South

Carolina Code of Professional Responsibility sets the ethical standards governing the practice of law in this court. It is the court's responsibility to use its disqualification power to see that those who practice before the court adhere to the South Carolina Code. See Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d

57.    **Brown v. Daniel**

180 F.R.D. 298 (D.S.C. 1998)  Cited 3 times

A motion to disqualify counsel is a matter subject to the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution. Under District Court Local Rules 2.08 and 2.09(h)(i)(2), the South Carolina Code of Professional Responsibility sets the ethical standards governing the practice of law in this court. It is the court's responsibility to use its disqualification power to see that those who practice before the court adhere to the South Carolina Code.

58.    **Bank of the Ozarks v. Kingsland Hospitality, LLC**

4:11-cv-237 (S.D. Ga. Oct. 5, 2012)  Cited 2 times

"The standards of professional conduct of attorneys appearing in a case or proceeding [in this Court]... are governed by the Georgia Bar Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct.. .. A violation of any of these rules in connection with any matter pending before this Court may subject the attorney to appropriate discipline." LR 83.5(d), SDGa.

59.    *United States v. Cason*

CRIMINAL ACTION NO. 1:15CR30 (N.D.W. Va. Aug. 2, 2016)

becoming or continuing as an advocate." Id. at 1273 n.21 (quoting Model Code of Prof'l Responsibility EC 5-10 (Am. Bar Ass'n 1980)). Ethical conduct in this Court is additionally governed by the District Local Rules, which state that "attorneys shall conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct . . . ." LR Gen P 84.01. An examination of the West Virginia Rules of Professional Conduct, Rule 3.7, provides a standard

31

60.    All Attorneys listed are Turner Padget Graham & Laney Shareholders, all representing Turner Padget.  Melody Breeden ( Turner Padget), who represents the deceased R. Wayne Byrd's estate on March 19, 2024, committed failure to reveal to Judge Boan in Probate Court ( 2023es2200370 S.C.), thus failing to disclose to the probate Court or Federal Court the extrinsic fraud, and the use of unenforceable void contract/agreements as valid evidence, was and is fraudulent and misleading and, yet used while no attorney disclosed or reported to the Tribunal.

61. Omit.

62.    Attorney Melody Breeden was aware that Plaintiff had filed a Federal Complaint against Turner Padget, who is a shareholder and an attorney of Turner Padget/investor in Turner Padget, who has access to the complaint filed against Turner Padget, CEO Attorney Wayne Byrd, Attorney John Wilkerson, Carlyle Richardson Cromer, Esq., CEO Attorney Pierce Campbell.

63.    Breeden is a shareholder and attorney employed by Turner Padget. She meets with Turner Padget and its officers and goes to hearings of all pending lawsuits, including Plaintiffs'. Breeden is as guilty as any other Turner Padget lawyer since she knew her lawyers were conducting great fraud against Plaintiff but did not report it.

Breeden's lack of reporting damaged the Plaintiff, for this case could have been settled through Wayne Byrd's estate.

64.    Breeden protected attorney Wayne Byrd's estate, letting Turner Padget abuse their authority by prosecuting the innocent Plaintiff for years without revealing the intentional fraud against the Plaintiff.

65.    Breeden had to report to the tribunal the many violations of law Turner Padget and their lawyers had committed against the Courts and Plaintiff, including a 3.5-million-dollar judgment against Plaintiff Hutson by concealment and failure to reveal creating fraud against the State Court Judge McFaddin.

    a.    Breeden was knowledgeable about wrongful conduct but simply would not report or reveal in Probate Court recently, even after Plaintiff brought to the S.C. Probate court and Judge Boan's attention that Turner Padget and their lawyers were committing extrinsic fraud, filings, and defending unenforceable written agreements such as the Lease Purchase Agreement.

    b.    Breeden merely sat still and quiet with no disclosure of my allegations.

66.    U.S. v. Meinster

    488 F. Supp. 1342 (S.D. Fla. 1980)   Cited 8 times

the proceedings, he should bring that evidence to the attention of the court. Cf. A.B.A. Code of Professional Responsibility, DR 7-102(B) DR 4-101(C)(3). When this information is received by a court, it is acting in a judicial capacity. Similarly, any attorney should tell the court if he or she believes a fraud is about to be perpetrated on the court. Cf. id. EC 7-26 DR 7-102(B). Again, when this information is received by a court, it is acting in its judicial capacity. It may be argued there must be limits to the evidence which comes to a court in its judicial...

67.    The 108 acres had 740 family memberships with the "sole right of use" up to (2) live times for each family member. The 740 family members had pre-paid to Big Water Resort 5 million dollars.  After pre-collection of the 5 million through Big Water Resorts, Sellers Richard Clark, Steve Lovell, and TLC Holdings quietly pulled the money out of BWR and placed it in other LLCs they owned, knowing full well that the move would destroy BWR financially for two lifetimes.

68.    Omit.

69.    BWR found themselves with no money to operate on while facing obligations for (70) years.  This is why Sellers were so desperate to trick Plaintiff into buying Big Water Resort.  Only a scam and fraud.

70.    No lawyer named in this Federal Complaint has revealed to the Plaintiff, Courts, or Judges they were participants in the extrinsic fraud, failing to disclose the frauds, using extrinsic fraud on Courts, and using unenforceable and void agreements as if they were valid to win all filings, hearings, and correspondence. All Defendants

conspired to help Tom Harper and Turner Padget, who started using the unenforceable

Lease Purchase and extrinsic fraud in the Courts.

71.     Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is
unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of
Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may
be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472
(N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it
would be premature to dismiss Professional's unjust enrichment claim against the lender. So
Defendants'...

72.     The plaintiff will submit the Defendants' own filings signed by them and

electronically filed by them in the Federal and State Courts to prove their guilt after

the Lease Purchase became unenforceable, void, worthless, and dead. The Lease

Purchase agreement became unenforceable immediately on December 15th, 2010.

        There are multiple pages of all the Defendants writing and defending that the

unenforceable dead Lease Purchase Agreement is valid when the cited law shows it

was and is unenforceable, dead, and worthless.  All lawyers understand the definition

of unenforceable contracts.

73.     Plaintiff pleads with this Honorable Court to carefully read Plaintiff's exhibits,

which prove cover-up, lies, failure to reveal the truth, no probable cause, extrinsic

fraud, misrepresentations by Defendants, abuse of authority, and contract fraud.

Defendants' filings, even recently by Murphy Grantland, Timothy Newton, John

Grantland, Christian Stegmaier, Laura Baer, Collins, and Lacy.

74.    Christian Stegmaier individually, Laura Baer, Murphy Grantland, Timothy Newton, John Grantland, J.R. Murphy, Collins, and Lacy. failed to disclose known fraud to State, Appellate, and Federal Courts, including to Honorable Judge Norton.  But the lawyers filed about ( 600 ) pages to the Honorable Judge Norton, trying to convince Judge Norton to dismiss the Plaintiff's complaint with Prejudice, preventing the Plaintiff from proving his case.  Unfortunately for the Defendants, Judge Norton and Judge Cherry ruled Plaintiff's case would be dismissed <u>without Prejudice.</u>

75.    Christian Stegmaier, Esq. failed to disclose known fraud to State, Appellate and Federal Courts using both the unenforceable Lease Purchase Agreement and the Settlement Agreement to fraudulently win all actions against Plaintiff.

   a. Timothy Newton's group represented PAGI until they were fired, and then Christian Stegmaier's group represented PAGI.  Both law firms used the fraudulent lease-purchase agreement and the settlement agreement prepared by Attorney Thomas Harper, the seller's attorney, on behalf of PAGI.

   b. Attorney Christian Stegmaier knew he was committing perjury in front of Federal Judge Norton, including many filings in the Appellate Court.  Stegmaier understood that the Lease Purchase Agreement was dead, invalid, unenforceable, void, and fraudulently including the Settlement Agreement.   as well as the

Membership interest purchase Agreement written when Stegmaier, Esq. used that dead Lease Purchase Agreement as his greatest valid evidence.

76.    Laura Baer, individually, failed to disclose known fraud to State, Appellate, and Federal Courts and used the unenforceable, void fraudulent Lease Purchase Agreement as valid evidence to win all actions against the Plaintiff, preventing the Plaintiff from having his case heard in Federal, Appellate, and State Courts.

77.    Attorney Laura Baer, Esq., failed to disclose known fraud to State, Appellate, and Federal Courts even though she had a duty to do so. Baer knew she was committing perjury in front of Federal Judge Norton, including many filings in the Appellate Court. Baer understood that the Lease Purchase Agreement was dead, invalid, unenforceable, void, and fraudulently written when she used that dead Lease Purchase Agreement as valid evidence repeatedly, of which Plaintiff will show exhibits numbered at the end of this complaint.

78.    Collins and Lacy failed to disclose known fraud to State, Appellate, and Federal Judges, and Plaintiffs understood that the Lease Purchase Agreement was dead,

invalid, void, unenforceable, and fraudulently written when they used that dead Lease Purchase Agreement as valid evidence repeatedly.

79.    The plaintiff's complaint can prove that all Defendants used extrinsic fraud, unenforceable, void dead-on-arrival worthless agreements, abusive processes, extrinsic fraud, and abusive authority.

80.    Frank J. Gordon, individually, failed to disclose the known fraud and concealment in State and Appellate Court by intentionally concealing his known fraud and concealment by Turner Padget's group.

Even though Gordon promised to reveal the known fraud before the trial, such as extrinsic fraud, contract fraud, perjury, concealment, and failure to reveal by Turner Padget, Richard Clark, Steven Jimmy Lovell, Wayne Byrd, William Johnson, Cromer Carlyle Richardson, South Carolina (case number 2015cp1400615) in 12/ 07/ 2015, Frank Gordon revealed nothing.

Frank Gordon was the Plaintiff's attorney hired by Penn America and Global Indemnity.  The shock of Plaintiff's life.

81.    Attorney Frank J. Gordon, Esq. (representing Plaintiff) failed to disclose the known fraud and concealment in State and Appellate Courts, causing a 3.5-million-dollar judgment against Plaintiff in State Court.

82.    Millberg Gordon Stewart PLLC. while representing the plaintiff, Millberg Gordon Stewart PLLC intentionally failed to disclose the known fraud and concealment in State and Appellate Court, leaving the Plaintiff with no defense and saddled with a 3.5-million-dollar Judgment.

They also failed to disclose the circumstances of the void Lease Purchase Agreement, the illegal eviction without probable cause, and the fraud within it to the State Jury Trial and the Judge. In addition, Millberg Gordon Stewart PLLC brought none of the frauds that Richard Clark, Steven Jimmy Lovell, and TLC Holdings, LLC committed to the judge's attention or the jury, which caused Plaintiff to be handed a 3.5-million-dollar judgment in damages when Plaintiff was innocent.

83.    Penn America Insurance Company Global Indemnity Insurance Company They paid their lawyers to file unenforceable agreements and other frauds, such as the Lease Purchase Agreement, knowing full well that it was void, dead, worthless, and fraudulent, yet was used as valid evidence against Plaintiff.

In addition, Penn America and Global Indemnity Insurance were aware of the fraud that Sellers and their attorneys had committed but allowed their attorneys ( Timothy Newton, John Grantland, J.R. Murphy, Murphy Grantland,  Collins and Lacy, Christian Stegmaier, Laura Baer ) not to reveal to protect Turner Padget, Wayne Byrd, John Wilkerson's wrongful fraud.

84.    Paul Weissenstein individually executed, showing his support of the Consent order that was unenforceable due to the Lease Purchase Agreement being unenforceable and dead on arrival due to the Lease Purchase could not legally buy the property, and Sellers could not legally sell the property due to Sellers executing a long lease agreement between ( 740 ) family Memberships for two lifetimes for "sole right of use."

85.    The Family Memberships paid in advance to Sellers approx. 5 million dollars for the "sole right of use," making the Lease Purchase Agreement worthless, void, unenforceable, and not valid.  Weissenstein never told or informed Plaintiff, his client, that the Lease Purchase was unenforceable and worthless due to the 108 acres having a defective title for two lifetimes, preventing any new development.

86.    Weisseenstein continued to work with the Lease Purchase Agreement, understanding that the Lease Purchase was dead since neither Seller nor Plaintiff could legally sell or buy the 108 acres due to defective title caused by the 740 memberships family members who had bought the lease agreements for (2) lifetimes, in advance.  Paul Weisseenstein represented Plaintiff in getting his approvals to develop but concealed to Plaintiff that Plaintiff could never buy the 108 acres due to defective title and the unenforceable void and worthless Lease Purchase Agreement.

87.    The plaintiff, Hutson, paid Weisseenstein approx. 20,000 dollars to represent Plaintiff over two years while Plaintiff was trying to get his approvals to develop the 108 acres.  Once Plaintiff got fraudulently ejected from BWR, Plaintiff tried to sue

2:24-cv-04357-DCN-MGB     Date Filed 08/05/24     Entry Number 1     Page 36 of 103

Weisseenstein for malpractice, but the statute of limitations had ended. The plaintiff did not realize that Weissenstein purposely did not reveal to him that the Lease Purchase Agreement was void, dead on arrival.

88.     Neither Weisseenstein nor his lawyer, Steven Kropski, dared to reveal to any Court, Judge, or Plaintiff that the Lease Purchase was dead, void and unenforceable since neither party could legally perform.

Attorney Paul Weissenstein, Esq., executed the consent order, showing his support of the fraudulent Consent Order, which was unenforceable and fraudulent since it followed the fraudulent Lease Purchase Agreement. Since one agreement was attached to the other three, the first agreement was the Lease Purchase Agreement, which was cloaked with fraud, extrinsic fraud, and an unenforceable and void Lease Purchase Agreement. None of the agreements were valid or enforceable because they all expressed the right to close when it was legally impossible.

89.     Paul Weissenstein Law Firm executed, showing his support of the Consent Order that was unenforceable, void, and fraudulent when he understood that the Agreements were unenforceable yet never revealed the same to the State Court while Attorney Thomas Harper was trying to illegally evict Plaintiff.

90.     Omit.

91.    Attorney Raymond Steven Kropski, Esq., used the fraudulent and unenforceable and void Lease Purchase Agreement to defeat the Plaintiff when the Plaintiff had sued Weissenstein for malpractice. The plaintiff was unaware that Kropski represented Weissenstein, while both understood that extrinsic fraud and the use of the Lease Purchase Agreement were fraudulent and plotted.

92.    Earhart Overstreet, LLC.  Both used extrinsic fraud and an unenforceable void and invalid Lease Purchase Agreement as simply a "bad deal the Plaintiff got himself into". Raymond Steven Kropski, Esq. showed his wrongful support of the unenforceable agreement to the State Court and Appellate Court as valid.

       Weissenstein and Steven Kropski, Esq. told no Court, Judge, or Plaintiff that the Lease Purchase Agreement was a fraud, an unenforceable, void dead agreement that Weissenstein and Kropski should have reported to the Courts and Judges. They both were knowledgeable that the Plaintiff had been defrauded by attorney Thomas Harper and Turner Padget, Wayne Byrd, John Wilkerson, and Sellers but concealed it to win in State Court.

93.    Attorney William Johnson was hired by Turner Padget to give support and appeared in State Court as Plaintiff Richard Clark and Steve Lovell's attorney in a

42

fraudulent filing of a defamation case against Plaintiff Hutson. Johnson should have exposed the known fraud to the sitting Judge and Jury.

94.    Richard U. Clark individually did not reveal and conceal to State and Federal Courts he and TLC Holdings, LLC did not reveal and conceal to State and Federal Courts the known extrinsic fraud on the Court, use of unenforceable evidence, perjury, and failing to disclose to Plaintiff they were preventing Plaintiff any right to have his case heard regarding the right of possession of the 108 acres and the fraudulent Lease Purchase Agreement he also helped plan against Plaintiff.

Think about this: $6,000,000 from Hutson and $5,000,000 from the family members on the same 108 acres simultaneously. The two ( 740 ) lifetime leases on the 108 acres and the complete sale of the 108 acres to Hutson amounted to 11,000,000 dollars on an appraisal of 3M dollars. The sale to close in 12 months to Hutson and the long-term two-lifetime ( 70 ) year leases to 470 families for (sole right of use) a different purpose of use made it illegal and impossible. The long-term lease agreements were never recorded in violation of South Carolina law, preventing Plaintiff from understanding there was a defective title. State law requires Leases to be recorded.

There was no meeting of minds. The sellers were scamming and defrauding both the family members and the Plaintiff. The family members recently settled with the

Sellers, but the sellers refused to settle with this Plaintiff, who has been treated far worse in multiple ways legally.

95.    Steven Lovell Individually did not reveal and conceal to State and Federal Courts TLC Holdings, LLC did not reveal and conceal to State and Federal Courts the known extrinsic fraud on the Court, use of unenforceable, void evidence, perjury, and failing to disclose to Plaintiff they were preventing Plaintiff any right to have his case heard regarding the right of possession of the 108 acres and the fraudulent Lease Purchase Agreement he helped plan against Plaintiff.

96.    Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against the lender. So Defendants'...

97.    **Federal Question** Jurisdiction 1331, 28 U.S. Code: The district courts shall have original jurisdiction of all civil actions arising under the United States Constitution, laws, or treaties.

June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85–554, § 1, July 25, 1958, 72 Stat. 415; Pub. L. 94–574, § 2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96–486, § 2(a), Dec. 1, 1980, 94 Stat. 2369.)

98.    What is the meaning of federal question?

A genuine issue of law or controversy that can be originally adjudicated within a United States federal court because it concerns violations of the U.S. Constitutional law, Federal statutory law, a treaty, or international law.

This includes the right to hear property possession and wrongful eviction, costing the Plaintiff hundreds of thousands.

## 99.  Jurisdiction

100.    Plaintiff's ability to **not** have his case heard in any court is a violation of the 14th Amendment, which was intentionally caused by the fraudulent Defendants' trickery via unenforceable void evidence, no probable cause, Extrinsic fraud on the courts, judges, and plaintiff, as well as the inability to have his case heard regarding property possession and illegal eviction.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States", June 25, 1948.

(1) the plaintiff's ownership or right to possession of the property was never heard. Defendants blocked Plaintiff's ability to have his case heard via extrinsic fraud on the Courts by filing unenforceable fraudulent filings and the abuse of authority in Federal Court.

(2) the defendant's conversion by a wrong act or disposition of the plaintiff's property rights was never heard.

(3) damages suffered by the plaintiff were never heard.

a. The plaintiff reserves the right to "equitable tolling" based on perjury, jury tampering, mail fraud, theft by deception, concealment fraud, extrinsic fraud upon the court, torts, and punitive damages and to have the question of property possession and right not to have been evicted due to fraud.

b. Defendants should have made restitution to Plaintiff to receive justice before any eviction since Plaintiff moved from Tennessee to South Carolina to buy the 108 acres under the Lease Purchase Agreement, which was fraudulent without Plaintiff knowing that. There was never a meeting of the minds as well.

101.    The fraudulent and intentional violation of Federal Rule 11, 11b,11c by Defendants filing false papers, misrepresenting during live hearings, failing to disclose, intentional concealment regarding the filing and signing fraudulent documents to Federal and State Courts Judges, and presenting null and unenforceable contract/agreements as genuine/true documents of evidence when Defendants knew obstruction of justice was occurring.

## 102.    Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

(a) Signature.   Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must

46

state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

103.    Representations to the Court. By presenting to the court a pleading, written motion, or other paper—by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, changing, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically, so identified, will probably have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are justified on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

104.  **Sanctions.**

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b)has been violated, the court may impose a proper sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Without exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If justified, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why the conduct specifically described in the order has not violated Rule 11(b).

(4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what deters repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and justified for effective deterrence, an order directing payment to the movant of part or all the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(6) against a represented party for violating Rule 11(b)(2); or

47

(7) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

105.    So, the Federal Question is alive and applies, for many questions about the violation of the Plaintiff's 14th Amendment exist, extrinsic fraud, preventing the Plaintiff from hearing his case and using fraudulent evidence to support the Defendant's fraudulent position without probable cause, violating Plaintiff's right of possession and fraudulent eviction.  This case demands a federal jury.

106.    (1) the plaintiff's ownership or right to possession of the property was never heard. Defendants blocked Plaintiff's ability to have his case heard via extrinsic fraud on the Courts by filing unenforceable fraudulent filings and the abuse of authority in Federal Court.

107.    (2) the defendant's conversion by a wrong act or disposition of the plaintiff's property rights was never heard.

108.    (3) damages suffered by the plaintiff were never heard.

109.    The defendants' conspired purpose was to be guaranteed that they would win all filings, briefs, motions, and hearings at all costs, having no respect for Federal

Judge David Norton since they knew they were conning him and his Court regarding using the unenforceable, void, worthless Lease Purchase Agreement as valid evidence. Defendants intertwined extrinsic fraud, use of unenforceable Agreements, Lease Purchase Agreements, concealment, contract fraud, and a total lack of probable cause to take any action against Plaintiff.

110.    All named Defendants understood they might get caught, yet no Defendant revealed the truth and hid the fraud.

This case has: "beyond a reasonable doubt, a preponderance of the evidence, and clear and convincing."

111.    "Subject-matter Jurisdiction requires that a court has the power to hear the specific claim brought to that court. While litigating parties may waive personal jurisdiction, they cannot waive subject-matter jurisdiction."

112.    (1) the plaintiff's ownership or right to possession of the property was never heard. Defendants blocked Plaintiff's ability to have his case heard via extrinsic fraud on the Courts by filing unenforceable fraudulent filings, abuse of authority, extrinsic fraud on the Courts, abuse of evidence while obtaining a fraudulent ejectment order by the Courts,

113.    (2) the defendant's conversion by a wrong act or disposition of the plaintiff's property rights was never heard.

49

114.   (3) damages suffered by the plaintiff were never heard.

115.   (4) Plaintiff had permission to move onto the 108 acres, lived in one of the small cabins, and lived there for over 3 years.  The Lease Purchase Agreement provided authority for the Plaintiff to legally live and occupy the 108 acres until closing, which could never legally happen.  Sellers never considered making restitution with this Plaintiff before fraudulently evicting him.

116.   The Plaintiff ran the Big Water Resort ( 7 ) days each week for (3) years with no compensation from Sellers and paid 85,000 dollars towards the Lease Purchase Agreement, among many other damages outlined in this complaint.

117.   maintained the 108 acres, including the Big Water Resorts, until closing,

118.   struggle to cover the cost of keeping the gates open, having to sell his diesel truck in top condition to help pay the monthly electric bill.

119.   The plaintiff strived to get all County approvals for the new subdivision, but much later, the Plaintiff found out that the defective title prevented any development caused by the Defendant Sellers and their attorneys.

120.   Paid over ten thousand dollars in sewer septic tank pump outs.

121.  Paid about (280,000) for electricity and much more.

122.  The plaintiff was never told that the Sellers could never sell the property due to defective title, and the Lease Purchase Agreement was fraudulent, void, and unenforceable.  I remind the Court that the Sellers and their attorneys never revealed that the Lease Purchase Agreement was unenforceable and dead on arrival.  The plaintiff was unaware that there was no meeting of the minds regarding the Lease Purchase Agreement.  Only crooked Sellers and Attorneys.

123.  AT the time of the wrongful eviction and ejection, Defendants never revealed to Plaintiff or to any Court, Judge, or Jury that Defendant's had intentionally created the Lease Purchase Agreement to be unenforceable to deceive Plaintiff into buying the defuncted Big Water Resorts.

124.  These long-term leases with the family members were executed at about (4) years before Plaintiff's arrival in South Carolina, yet Sellers and their attorneys intentionally did not report or record the long-term leases as required by the State of South Carolina.  It's just another piece of intentional fraud against Plaintiff.

125.      South Carolina Law: to give notice to third persons, any lease or agreement for the use or occupancy of real estate shall be recorded in the same way as a deed of real. Estate. (SC #27-33-30)."

51

126.    This case has **subject matter jurisdiction** because Plaintiff's 14th Amendment was intentionally violated and destroyed via extrinsic fraud in the courts and the use of fraudulent evidence that was unenforceable, null, void, and worthless agreements. This case had no probable cause, and Defendants fraudulently obtained an order for ejectment by using the Lease Purchase Agreement, which was an unenforceable, worthless, and invalid agreement that Defendants did not disclose to the Court nor any Judge when applying for the ejectment order.

This case requires this Court to hear it due to the right of possession and illegal eviction, extrinsic fraud on the Courts, no probable cause, contract fraud, and intertwined frauds.

127.    Abuse of authority was fraudulently used to misinform the Court and Judge that the Defendants failed to disclose the truth regarding the unenforceable, void Fraudulent Lease Purchase Agreement as valid evidence. The plaintiff's rights were violated, preventing the Plaintiff's case from being heard regarding the illegal and fraudulent ejectment application.

128.    These actions prevented the Plaintiff's case from being heard while wrongfully suing the Plaintiff (using fraudulent evidence with no probable cause), abuse of process, causing great financial damages, multiple judgments, loss of income, mental stress, physical harm, and other forms of suffering, including indigency over the past nine years or longer.

129.    No State shall make or enforce any law that abridges the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**130.** **Plaintiff's rights** were violated by not hearing Plaintiff's case:

131.  The plaintiff's ownership or right to possession of the property.

132.  The defendant's conversion by a wrong act or disposition of the plaintiff's property rights;

133.  damages suffered by the plaintiff.

**134.**    There is no statute of limitations when a party seeks to set aside a judgment due to fraud upon the court.  Rule 60(b), SCRCP;  see Hagy v. Pruitt, supra (court has the inherent authority to set aside a judgment on the ground of extrinsic fraud despite any facially applicable statute of limitations).   To secure equitable relief based on fraud, the fraud must be extrinsic.   Bryan v. Bryan, 220 S.C. 164, 66 S.E.2d 609 (1951). (extrinsic fraud is necessary to secure equitable relief vacating a prior judgment).

Extrinsic fraud is "fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.   Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action."   Hilton Head Ctr. of South Carolina v. Public Serv. Comm'n, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987).

a.  In the Plaintiffs case, not only did the Sellers commit fraud, but their attorneys prepared the fraudulent "agreements," and other Defendants were complicit in continuing to file papers and motions using the fraudulent agreements as if they were valid in Federal, Appellate, and State Courts, creating the "EXTRINSIC FRAUD ON THE COURTS, Judges, and against Plaintiff.

Plaintiff will show at the end of this complaint Defendants using the Fraudulent Lease Purchase Agreement and the Settlement Agreement prepared by Seller's attorney, Thomas Harper.

135. **Federal Court Jurisdiction 1998). Generally, a case can be filed in a federal district court only if there is diversity of citizenship under 28 U.S.C. § 1332 or if there is federal question jurisdiction under 28 U.S.C.**

Federal questions include a jury trial hearing and ruling on wrongful conduct and legal rights taken from Plaintiff by the Defendants regarding his legal rights to continue to have the 108 acres of land until Plaintiff had been made hold via restitution before Plaintiff was forced off the 108 acres via of an illegal eviction defrauding both Plaintiff, Courts, and Judges causing great harm and grief to Plaintiff.

136. **Legal Basis:**

a.    Abuse of process has been described as misusing a "criminal or civil process against another party for a purpose different than the proceeding's intended purposes" and causing the party damages (e.g., arrest, seizure of property, or economic injury).

b.    **Davis v. Bankers Life & Cas. Co.**    Neither party addresses Plaintiff's fraudulent concealment claim. It is unclear whether Plaintiff is still pursuing this claim (other than including it in the Count II heading). (*See* SAC ¶¶ 94-103). The Court still notes that fraudulent concealment is an "equitable doctrine that is read into every federal statute of limitations," and tolls the limitations period "where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it." *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 508-09 (3d Cir. 2006).

c.    To benefit from the equitable tolling doctrine, Plaintiff must prove:

"(1) that the defendant actively misled the plaintiff; That **has been proven.**

"(2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period. **The plaintiff was unable to recognize the Defendant's extrinsic fraud. An unenforceable lease-purchase agreement and wrongful evidence were used. The plaintiff had no way of** recognizing the various frauds.

(3) where the plaintiff's ignorance is not attributable to his lack of reasonable due diligence in trying to uncover the relevant facts." *Id.* at 509.

d.    The plaintiff declares that he had no knowledge, notice, or disclosure, nor did any Court or Judge know that the Plaintiff was being legally trampled by Defendants using great amounts of fraud such as the fraudulent Lease Purchase Agreement.

e.    Plaintiff has struggled for years, working seven days each week, usually trying to figure out the frauds that Defendants have conducted so that Plaintiff could insert all frauds to get restitution and sanctions and all other restitution this complaint asks for to be taken to a Federal Jury.

137.    a. Hunt v. McNeil Consumer Healthcare

CIVIL ACTION NO: 11-0457 (E.D. La. Oct. 18, 2012)

The closest analog is Federal Rule of Civil Procedure ("Rule") 11, which requires that filings into court be signed and the truth of their contents attested to, and imposes sanctions on a signatory found to have submitted pleadings into court in bad faith. (Rule 11 c). The plain language of Rule 11 restricts it to an "attorney or unrepresented party," but makes no provision for sanctions of a party ...

b. No State shall make or enforce any law that abridges the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

138.    Ginsburg v. ICC Holdings, LLC

56

Civil Action No. 3:16-CV-2311-D (N.D. Tex. Nov. 13, 2017)

Generally, a contract entered violating federal law or public policy is unenforceable. See Kaiser

Steel Corp., 455 U.S. at 77 ("There is no statutory code of federal contract law, but our cases leave

no doubt that illegal promises will not be enforced in cases controlled by the federal law."); id. at 83

("It is also well established

139.    Abuse of process has been described as misusing a "criminal or <u>civil process</u>

<u>against another party for a purpose different than the proceeding's intended</u>

<u>purposes</u>" and causing the party damages (e.g., arrest, seizure of property, or

economic injury).

140.    Davis v. Bankers Life & Cas. Co.   Neither party addresses Plaintiff's fraudulent

concealment claim. It is unclear whether Plaintiff is still pursuing this claim (other

than including it in the Count II heading). (See SAC ¶¶ 94-103). The Court still notes

that fraudulent concealment is an "equitable doctrine that is read into every federal

statute of limitations" and tolls the limitations period "where a pattern remains

obscure in the face of a plaintiff's diligence in seeking to identify it." Cetel v. Kirwan

Fin. Group, Inc., 460 F.3d 494, 508-09 (3d Cir. 2006).

141.    To benefit from the equitable tolling doctrine, Plaintiff must prove: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Id.* at 509.

142.  omit.

## 143.  Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions

(a) Signature.   Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

144.  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

145.   The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, changing, or reversing existing law or for establishing new law.

146. The factual contentions have evidentiary support or, if specifically so identified, will probably have evidentiary support after a reasonable opportunity for further investigation or discovery and

147.  The denials of factual contentions are justified on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

148. ) **Sanctions.**

**(1)** *In General.* **If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose a proper sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Without exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.**

149.  *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and describe the conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If justified, the court may award to the prevailing party the reasonable expenses for the motion, including attorney's fees.

150.  *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why the conduct specifically described in the order has not violated Rule 11(b).

151.  *Nature of a Sanction.* A sanction imposed under this rule must be limited to what deters repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and justified for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

152.  *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(C) *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Inapplicability to Discovery. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

*Notes*

153.  (As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007.)

**154.** <u>Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding</u>

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 122.    120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against the lender. So Defendants'...

**155.** .Taylor v. AIA Services Corp.  151 Idaho 552 (Idaho 2011)    is illegal, which is a question of law for the court to determine from all the facts and circumstances of each case. An illegal contract rests on unlawful consideration including any act or forbearance contrary to law or public policy. Generally a contract prohibited by law is illegal and unenforceable. A contract made to further any matter or thing prohibited by statute is void. This rule applies on the grounds of public policy to every contract founded on a transaction prohibited by statute. The Idaho Court of Appeals has

**156.**    Prospective plaintiffs often determine that they have a claim only after the applicable statute of limitations has run. Particularly in this post-Watergate era, such people are likely to suspect that the wrongdoer concealed the claim. If they are right, they may escape the bar of the statute of limitations by relying on the doctrine of fraudulent concealment, which "tolls" the application of the statute of limitations. When a defendant has concealed his mis- conduct, the limitations period does not begin to run until after the plaintiff discovers, or with due diligence should have discovered, his claim against the defendant. Watergate. itself illustrated the tolling doctrine in operation:

**157.**    Defendants used fraudulent concealment, which "tolls" the application of the statute of limitations. When a defendant has concealed his misconduct, the limitations period does not begin to run until after the plaintiff discovers, or with due diligence should have discovered, his claim against the Defendants.  See Hunt v. Bittman 482 F. Supp, 1017, 1022 (D.D.C. 1980).

    a. Plaintiff states he figured out ( around May 10[th,] 2024) that the Defendants have used all along the fraudulent and worthless Lease Purchase Agreement to win all cases.  No one had ever shared that with this Plaintiff.

60

b. Plaintiff asks for tolling that starts on May 10, 2024, when Plaintiff first gained knowledge of the fraud and plot.

c.     Defendants used fraudulent concealment, which "tolls" the application of the statute of limitations. When a defendant has concealed his misconduct, the limitations period does not begin to run until after the plaintiff discovers, or with due diligence should have discovered, his claim against the Defendants.  See Hunt v. Bittman 482 F. Supp, 1017, 1022 (D.D.C. 1980).

158.   Silva v. Stevens

156 Vt. 94 (Vt. 1991)   Cited 82 times
As for sales of goods). It does not denote an exclusion of tort liability. See Kopischke v. First Continental Corp., 187 Mont. 471, 484-85, 610 P.2d 668, 675 (1980). It does not address tort liability. Consistent with that view, an "as is" clause in a sales contract does not as a matter of law defeat a fraud claim. See Slater v. KFC Corp., 621 F.2d 932, 935 (8th Cir. 1980) (Missouri law); L. Luria Son, Inc. v. Honeywell, Inc., 460 So.2d 521, 523 (Fla. Dist. Ct. App. 1984); Bill Spreen Toyota, Inc. v. Jenquin, 169 Ga. App. 855, 856,

159.   Defendants premeditated a plot to fraudulently take millions of dollars from Plaintiff through concealment, Extrinsic fraud, and failure to reveal the facts about what they were wrongfully perpetrating, meaning the use of unenforceable worthless void "agreements" as their concrete evidence without probable cause and extrinsic fraud on the courts and judges all combined into one intertwined action of fraud.

160. Defendants will try to deceive and conceal the same from the Honorable Judge Cherry for these reasons:

161. The void Lease Purchase Agreement was legally impossible to comply with, making the Agreements unenforceable and worthless; defendants fraudulently used the worthless unenforceable agreements as if they were valid, knowing full well that they were dead as outlined in law and cited several times within this complaint and extrinsic fraud upon the Courts and Plaintiff. Defendants will try to cover their dirty and uncleaned hands, hoping they are not caught by the Judge or Jury.

162. State and Federal law states that any "agreement" prepared by fraud, concealment, or illegality cannot survive, dead on arrival and unenforceable.

163. The Plaintiff will submit exhibits that clearly show the Defendants used the dead-on-arrival "agreements" to process their dead evidence to sue the Plaintiff, concealing these actions from The Honorable Judge David Norton, Judge Baker, and many other State Court Judges, including the Plaintiff.

164. Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding
2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against the lender. So Defendants'...

165. The Defendants demanded every deposition without authority, falsely filed papers, and used every defense fraudulently. Their foundation of evidence was

nothing more than fraudulent, unenforceable dead-on-arrival "agreements" that could not be legally complied with; in addition, there was no probable cause.

166.    No Judge questioned the Defendants honesty. No Judge was told the truth, for all Defendants concealed their knowledge in violation of Court Rules and the Plaintiff's 14th Amendment.

167.    **Factual Statement:** ( Something factual is real. It is based on fact, meaning it can be proven, repeated, or observed ).  **Defendants used extrinsic fraud in the courts and in Plaintiff's unenforceable contracts/agreements, which were null, voided, and worthless.  The seller's attorneys, Penn America, Global Indemnity, and the Defendant's Attorneys continued to use the unenforceable Lease Purchase Agreement to obstruct justice, preventing the Plaintiff's case from being heard in all state and federal courts as well.**

a. **Other Defendant attorneys conspiring with Harper and Turner Padget, Christian Stegmaier, Laura Bayer, Collins and Lacy law firm, Timothy Newton, John Grantland, J.R. Murphy, Murphy Grantland representing Penn America and Global Indemnity ( Plaintiff's insurance company ), used extrinsic fraud on the courts, used the unenforceable void Lease Purchase Agreement to deceive the Judges and Plaintiff to guarantee all fraudulent wins before all Courts.**

This included Federal, Appellate, and State Courts. The plaintiff was prevented from having his case heard regarding the right of possession and illegal, fraudulent eviction. The Defendants understood that Plaintiff did not have a clue about using unenforceable dead agreements, nor did he understand how Defendant always won all hearings and filings.

b. ALL DEFENDANTS WERE EXTREMELY CAREFUL NEVER TO MENTION THE FRAUD TO THE PLAINTIFF OR JUDGES HOW THEY WERE BEING COMPLICIT WITH THOMAS HARPER AND THE FIRM, INCLUDING TURNER PADGET AND THE FIRM.  ALL LAWYERS AND SELLERS FULLY UNDERSTOOD PLAINTIFF COULD NEVER CLOSE or BUY THE PROPERTY due to 740 family memberships for "sole right of use up to (70) years of which was pre-paid amounting to 5 million dollars to BWR.

c. The Lease Purchase Agreement was prepared in a way that conned and defrauded, causing Plaintiff to Purchase a defunct BWR and be placed in a helpless position to be sued repeatedly, wrecking, and destroying Plaintiff's life.

d. This entire fraudulent plan was to cause Plaintiff to become responsible for the legal chaos that would come from owing and being responsible for legal trouble regarding BWR. For the last nine (9) years, the plaintiff has desperately sought closure with restitution.

168.    Both Sellers and their attorneys were aware that the voided "Lease Purchase Agreement and three other connected agreements" were dead, void, useless, and

unenforceable since neither Seller nor Plaintiff could legally honor the Lease

Purchase Agreement due to a major defective title that Sellers and their attorneys

were aware of. Attorney Thomas Harper purposely created the agreements to be

fraudulent, void, and worthless only because he was aware that his clients could sell

the 108 acres due to the up to 70 years of "sole right of use" for the family members.

To have a good title, Plaintiff would have had to wait until Plaintiff was about

One Hundred and Fifty years old.

169.    There was no meeting of the minds and no probable cause based on one of

many cited case laws Plaintiff cites defining an unenforceable contract or agreement.

170.    Defendants Sellers and their attorneys knew they could never sell the 108 acres

to Plaintiff due to a hidden title defect. The fraudulent Lease Purchase Agreement was

solely prepared to coerce and trick Plaintiff into buying the defunct Big Water Resort,

which had a 22-million-dollar hidden duty that was concealed and not revealed to

Plaintiff.

171. Omit

172.    Even though the Plaintiff's legal inability to comply with the fraudulent and void

Lease Purchase Agreements, the Seller's attorneys sued the Plaintiff for default and

failure to close within 12 months in Bankruptcy Court ( Judge Waits ), asking that Judge

Waits kick out the Plaintiff's application for reorganization since Plaintiff had not

closed within 12 months and for other illegal reasons that Plaintiff could not legally

perform. Sellers could not legally sell the 108 acres due to a defective title they were

aware of. The plaintiff was still unaware he had been lured into an illegal trap.

a. Plaintiff still had no idea that the void Lease Purchase Agreement was

unenforceable, null, and void due to fraudulent hidden and concealed knowledge that

Sellers and their attorneys understood that Plaintiff could never comply with the

unenforceable voided Lease Purchase Agreement since the 108 acres of land were

defective caused by Sellers entering into 740 individual two-lifetime lease agreements

"for the sole right of use".

b. In addition, Sellers pre-collected 5 million dollars for the sales of the long-

term leases for the family memberships before Plaintiff's arrival in South Carolina and

before the void Lease Purchase Agreement prepared by Sellers Attorney Thomas

Harper and his Associates and firm promised Plaintiff he could divide and develop

hundreds of new cabins within the 108 acres once he bought and closed on the 108

acres.

c. Once again, the Sellers intentionally prepared the Lease Purchase

Agreement, knowing the Plaintiff could never close due to the defective title; it was a

con only to lure the Plaintiff into buying the defunct BWR.  Sellers knew that Plaintiff

would default because he could not legally comply with the Lease Purchase

Agreement, the fraudulent Membership Interest Purchase Agreement, nor could the

Sellers.  Sellers merely wanted to get rid of BWR quickly and that 22 million-dollar

duty.


173.   Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding

        2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, the plaintiff may maintain an
unjust enrichment claim if the written document is unenforceable. In re Prudential Ins. Co. of Am.
Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be
considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho,


174.   Johnson County Sav. Bank v. Creston

        212 Iowa 929 (Iowa 1931)   Cited 41 times

        seems not to have been involved. It was said: "That contracts such as are here complained of are
        against public policy is plainly manifest. The courts of the country, including this court, have
        repeatedly made pronouncements to that effect. And it is fundamental doctrine that a contract
        which is violative of public policy is void and will not be enforced. Guenther v. Dewien, 11 Iowa
        133; Merrill v. Packer, 80 Iowa 543; Greenhold on Public Policy, 335. Thus, in Weitz v. Independent
        District, 78 Iowa 37, it appeared that the board of the defendant district had employed one of its
        own members to


175.   120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim
against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against
the lender. So Defendants'...


176.   Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)
364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is
unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of

Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against the lender. So Defendants'...

177.    Taylor v. AIA Services Corp.  151 Idaho 552 (Idaho 2011)    is illegal, which is a question of law for the court to determine from all the facts and circumstances of each case. An illegal contract rests on unlawful consideration, including any act or forbearance contrary to law or public policy. Generally, a contract prohibited by law is illegal and unenforceable. A contract made to further any matter or thing prohibited by statute is void. This rule applies on the grounds of public policy to every contract founded on a transaction prohibited by statute. The Idaho Court of Appeals has

178.    In re Enron Corporation Securities

761 F. Supp. 2d 504 (S.D. Tex. 2011)  Cited 63 times

facts to show they were knowingly and intentionally defrauded by Deutsche Bank and Enron with their superior knowledge, these conditions in the Purchase Agreement would not bar Plaintiffs' fraud claims at this stage. "[W]here a contract is induced by fraud, there is in reality no contract, because there is no `real assent' to the agreement." Edward Thompson Co. v. Sawyers, 111 Tex. 374, 874 (Tex. 1921), quoted by Schlumberger Technology Corp. v. Swanson, 959 S.W. 2d 171, 178 (Tex. 1997), and by Authorlee v. Tuboscope Vetco Intern., Inc., 274 S.W. 3d 111, 129 (Tex. App. —

179.    Jackson v. Clerk of Justice Court
■■ ■■    CIVIL ACTION NO. 3:19-CV-480-HTW-LRA (S.D. Miss. Aug. 1, 2020)   that occurred in 1997, over twenty years ago. Accordingly, under § 15-1-49, Jackson's claims are barred. Jackson, however, claims that the Defendants fraudulently concealed his claim from him, thus preventing him from suing earlier. The principle of concealed fraud is an exception to the applicable statute of limitations. McMahon v. McMahon, 157 So. 2d 494, 499, 247 Miss. 822, 832 (1963). However, the

rule of concealed fraud cannot apply to matters of public record. Id., 157 So. 2d at 500, 247 Miss. at 834 (citing Adams v. Belt, 136 Miss. 511, 100 So. 191, 194 (1924)). In

180.   Jones v. Marin

Civ. No. 07-0738 (WHW) (D.N.J. Aug. 20, 2009)   Cited 13 times

Lahanis first accuses Jones of fraud for representing that he would retire from the trucking industry. A contract induced by fraud may be considered invalid and unenforceable under the law. See Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). The elements of fraud in the inducement are a misrepresentation of material fact, knowledge, or belief by the defendant of its falsity, intent that the other party rely on the

181.   October 2, 2015, at 10:32 a.m.   Proof of defective title

"5215 Dingle Pond Road, Summerton, S.C. 29148".

Attorney Michael Medlock, South Carolina Underwriting Counsel, wrote: "To Whom It May Concern":

"I have been advised that the property mentioned above is encumbered by several hundred private memberships and use agreements. These agreements do not appear in the public record; however, any title policy will contain exceptions to these interests once known to the company regardless of recording status".

"If there are hundreds of membership agreements for the exclusive use of portions of the property for 2 lifetimes, which is a cloud on-site that would be an exception in any title insurance policy."
"My opinion is that no lending institution would lend on this as they would require a subordination and non-disturbance agreement from each interested party in order to obtain a clear title policy".

Michael S. Medlock
South Carolina Underwriting Counsel
North Carolina State Counsel/Underwriting Counsel
Stewart Title Guaranty Company
South Carolina Office
4406 B Forest Drive, Suite 102
Columbia, SC 29206
803 765-1631

**182.** Chewning v. Ford Motor Company

354 S.C. 72 (S.C. 2003)  subornation of perjury by an attorney and/or the intentional concealment of documents by an attorney are actions which are extrinsic fraud. Contrary to perjury by a witness or a party's failure to reveal asked for materials, conduct which is intrinsic fraud, where an attorney — an officer of the court — suborns perjury or intentionally conceals documents, he or she effectively prevents the opposing party from having his day in court. These actions by an attorney are extrinsic fraud. We note that, while their analysis does not turn on the categorization of

a.

CHEWNING v. of whom Ford Motor Company is Petitioner. ...



FindLaw
https://caselaw.findlaw.com › ... › SC Supreme Ct.

There is no statute of limitations when a party seeks to set aside a judgment due to fraud upon the court. Rule 60(b), SCRCP; see Hagy v. Pruitt, supra ...

b. There is no statute of limitations when a party seeks to set aside a judgment due to fraud upon the court.   Rule 60(b), SCRCP; see Hagy v. Pruitt, supra (court has the inherent authority to set aside a judgment on the ground of extrinsic fraud despite any facially applicable statute of limitations).   To secure equitable relief based on fraud, the fraud must be extrinsic.   Bryan v. Bryan, 220 S.C. 164, 66 S.E.2d 609 (1951). (extrinsic fraud is necessary to secure equitable relief vacating a prior judgment).

C. Extrinsic fraud is "fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.   Relief is granted for extrinsic fraud on the theory that because the fraud prevented a party from fully exhibiting and trying his case, there has never been a real contest before the court on the subject matter of the action."   Hilton Head Ctr. of South Carolina v. Public Serv. Comm'n, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987).

183.   United States v. Knight

25 F. Supp. 3d 1104 (W.D. Ark. 2014), Knight handled his trust account appropriately and in line with the Rules of Professional Conduct. Everett testified that there are limitations on an attorney's use of a trust account. For example, Everett testified that a lawyer cannot help a client to commit fraud; however, that rule presupposes that the lawyer knows about the fraud.

184.   Kozel v. Kozel

299 F. Supp. 3d 737 (D.S.C. 2018)
**The South Carolina Supreme Court's holding in Stiles v. Onorato states that Gaar does not provide attorney immunity under all circumstances. 318 S.C. 297, 457 S.E.2d 601, 602 (1995) ("... an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client."). As to malicious prosecution, an attorney must also act in good faith to be immune from liability. Gaar , 339 S.E.2d at 889.**

185.   **South Carolina Federal District Court: Insurer May Act in Bad Faith by**

**Considering Extrinsic Evidence to Deny Duty to Defend**

WILLIAM CRAVEN POSTED ON APRIL 7, 2017 POSTED IN BAD FAITH TAGGED WITH BAD FAITH, DEFENSE, DEFENSE OBLIGATION, DUTY TO DEFEND, EXCLUSION, EXTRA-CONTRACTUAL, EXTRINSIC EVIDENCE, ROOFING LIMITATION ENDORSEMENT, SOUTH CAROLINA
**On February 6, 2017, the United States District Court, District of South Carolina, found a genuine dispute of material fact existed as to whether a Roofing Limitation Endorsement in a liability policy barred the insurer's duty to defend.** *Williford Roofing, Inc. v. Endurance Am. Specialty Ins. Co.,* **2017 WL 479507, at \*3-4 (D.S.C. Feb. 6, 2017).**

186.   **See United States v. Throckmorton, 98 U.S. 61, 65-66 (1878)  Only an "intentionally deceptive artifice" can reach the level of extrinsic fraud.  J.Amato v. Smith**
         **Note:  Penn America, Global Indemnity including their attorneys were aware that extrinsic fraud and unenforceable agreements were being used as valid.**
              a.    **South Carolina Federal District Court: Insurer May Act in Bad Faith by**

**Considering Extrinsic Evidence to Deny Duty to Defend**

WILLIAM CRAVEN POSTED ON APRIL 7, 2017 POSTED IN BAD FAITH TAGGED WITH BAD FAITH, DEFENSE, DEFENSE OBLIGATION, DUTY TO DEFEND, EXCLUSION, EXTRA-CONTRACTUAL, EXTRINSIC EVIDENCE, ROOFING LIMITATION ENDORSEMENT, SOUTH CAROLINA

On February 6, 2017, the United States District Court, District of South Carolina, found a genuine dispute of material fact existed as to whether a Roofing Limitation Endorsement in a liability policy barred the insurer's duty to defend. *Williford Roofing, Inc. v. Endurance Am. Specialty Ins. Co.*, 2017 WL 479507, at *3-4 (D.S.C. Feb. 6, 2017).

186.    See United States v. Throckmorton, 98 U.S. 61, 65-66 (1878)  Only an "intentionally deceptive artifice" can reach the level of extrinsic fraud.  J.Amato v. Smith

187.    Valerio v. Boise Cascade Corp.    **********  80 F.R.D. 626 (N.D. Cal. 1978)  Cited 582 times   of action against the attorney-defendants for malpractice and fraud. Although the claims are factually intertwined, that we discuss fraud in the court in this order is conclusive evidence that the contention was not rejected in our earlier opinion. There is no statute of limitations for fraud on the court. And jurisdiction exists to consider this claim even if there are no adversary parties then present before the court. See C. Wright & A. Miller, Federal Practice and Procedure s 2870 at 250 (1973). Our circuit, however, has rejected any mechanical approach to the...

188.    "South Carolina Appellate Court Rule 402 (K) oath sentence (10) & (11)  "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court but also in all written and oral communications".

Note: All Attorneys violated their Oath intentionally. In addition,  all Defendant attorneys intentionally committed perjury to all Federal, Appellate, State Judges and to Plaintiff.

189.    07 S.W.2d 518, 519 (Tex. 1974). The district court noted that "there cannot be fraudulent concealment of facts which admittedly were or should have been known by [the plaintiff]" Timberlake v. A.H. Robins Co., Inc., 727 F.2d 1363, 1366-67 (5th Cir. 1984) (quoting Fusco v. Johns-Manville Products Corp., 643 F.2d 1181, 1184 (5th

190.    Note: Plaintiff was never told or revealed that fraudulent concealment, abuse of authority, perjury, and the use of unenforceable agreements were used, causing all wins to be Defendants.  The plaintiff is a plumber and not an attorney.  The plaintiff could not find an attorney to take this case because the Plaintiff sued other attorneys.

191.    Historically, due process ordinarily entailed a jury trial. The jury determined the facts, and the judge enforced the law. In past two centuries, however, states have developed many institutions and procedures for adjudicating disputes. Making room for these innovations, the Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. *Mullane v. Central Hanover Bank* (1950).

### 1. *Hagy v. Pruitt*

339 S.C. 425 (S.C. 2000)   Cited 24 times

of fraud by an adverse party but the residual clause of the rule provides: "This rule does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court." Courts generally, including our Court of Appeals, have construed this clause to let an action set aside a judgment for extrinsic fraud outside the one-year time limit. See Evans v. Gunter, 294 S.C. 525, 366 S.E.2d 44 (Ct.App. 1988); Salway v. Arkava, 215 Mont. 135, 695 P.2d 1302 (1985) (residual clause of Rule 60(b) recognizes the inherent power of a court of equity to set aside

### 2.    *Eleson v. Lizarraga*

Case No. 1:15-cv-00008-LJO-SAB HC (E.D. Cal. Feb. 25, 2015)

701 (9th Cir. 1996), cert. denied, 522 U.S. 814 (1997)). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993). Petitioner claims there is no statute of limitations when fraud is present. However, Petitioner's fraud argument regarding the statute of limitations goes to the merits of his claims, and does not define why he should have the right to equitable tolling. Petitioner also claims there is an ongoing impediment to filing his petition

Chewning v. Ford Motor Company

354 S.C. 72 (S.C. 2003)

3.    Subornation of perjury by an attorney and/or the intentional concealment of documents by an attorney are actions which are extrinsic fraud. Contrary to perjury by a witness or a party's failure to reveal asked for materials, conduct which is intrinsic fraud, where an attorney — an officer of the court — suborns perjury or intentionally conceals documents, he or she effectively prevents the opposing party from having his day in court. These actions by an attorney are extrinsic fraud. We note that while their analysis does not turn on the categorization of

192.    Anyone with a little legal sense (except Prose Plaintiff) understands that a contract "agreement" prepared fraudulently by a Seller's attorney between Seller and Plaintiff where neither party can legally perform is unenforceable, voided, and lawfully wrong.  ALSO, the damaged party can seek restitution.

193.    Plaintiff is asking over 33,000,000.00 intentional and actual damages, consequential, incidental, special damages, punitive damages, extrinsic fraud, filing false papers, contract fraud, (9) years of work six days every week studying the laws to uncover the entire fraudulent plot, to achieve restitution including refunds owed to

Plaintiff due to intentional property fraud, extrinsic fraud upon the courts, preventing

Plaintiff from having his case heard in violations of the Fourteenth Amendment, loss

nine years of his senior life and ruining this innocent Plaintiff who fell into an illegal

preplanned fraudulent financial schemed and trap.


194.    Loss of 1.3 million ( or more dollars of income due to not having time to do

plumbing work and contracting as trained, to try to defend Plaintiff himself.


195.  **Turner Padget's Chief Executive Officer Takes The Helm**

**Posted On Dec 03, 2018**

Turner Padget Graham & Laney, P.A. is pleased to announce the election of the firm's new Chief Executive Officer. The South Atlantic law firm will now be led by Florence-based Chief Executive Officer C. Pierce Campbell. Former Chief Executive Officer R. Wayne Byrd concludes his term, and continues as a Shareholder in the Business Litigation Group.


196.    Federal causes of action relate to a party's right to take legal action due to a violation of its legal rights. This differs from the general term cause of action. In federal litigation, a party only has cause of action if it has a recognized statutory or constitutional right to sue for a violation.

In the Plaintiff's case, the 14th Amendment was violated by obstruction of justice, preventing the question from being heard, the right of possession being blocked, and wrongful eviction being blocked from being heard due to fraud by using an unenforceable Lease Purchase Agreement, extrinsic fraud on the Court, abuse of authority, and contract fraud.


197.    ( Plaintiff's rights were violated by extrinsic fraud, use of unenforceable evidence, Defendants intentional obstruction of justice preventing Plaintiff from having his case heard as well as preventing Plaintiff from having his rights of possession of the 108 acres

75

heard before a jury since the Lease Purchase Agreement prepared by Sellers and their attorneys were to defraud Plaintiff by setting an illegal trap to seem legal to destroy this Plaintiff.)

198.   **The Lease Purchase Agreement, the Retail Membership Agreement, the Settlement Agreement, and the Consent Order "Agreements" were intentionally fraudulent, void, and unenforceable, for the Sellers could never sell the property to the Plaintiff due to the existing defective title via 740 family memberships for the "sole right of use" sales up to two lifetimes of "sole right of use."**

199.   **All four fraudulent agreements were one of the same as the first Lease Purchase Agreement, making them unenforceable and dead on arrival. The plaintiff has cited case law about dead-on-arrival, using unenforceable contracts, and abusing authority.**

200.  **The fraud caused all four Agreements to be null, dead-on-arrival, and unenforceable, as all Defendants knew that all agreements were connected and worthless due to the massive defective title.**

**All Defendants, including Richard Clark, Steve Lovell, and TLC Holdings, LLC, Turner Padget, Richard Clark, CEO Wayne Byrd, Collins and Lacy, CEO Christian Stegmaier, Laura Baer, Timothy Newton, John Grantland, J.R. Murphy, and Murphy**

Grantland, conspired and were complicit with each other and continued to use the void and unenforceable agreements as if they were valid.

201. The Defendants used these unenforceable and void agreements to sue Plaintiff and acquire multiple judgments, including 2 million dollars in cash or about.

   a. Without the fraudulent use of the void and unenforceable Lease Purchase Agreement, Defendants would have done no wins since they had no probable cause.

202. No probable cause existed regarding the Plaintiff being sued or evicted. Defendants had no authority to sue the Plaintiff because they had purposely defrauded the Plaintiff via the Lease Purchase Agreement and the fraudulent void, and worthless Membership Interest Purchase Agreement to get the Plaintiff on the property for the long term and required—lured—the Plaintiff into buying the BWR at the signing of the fraudulent void Lease Purchase Agreement.

   The Defendants never revealed their premeditated plot and corrupt plan to anyone, including Judges, Courts, or the Plaintiff.

Sellers and their attorneys prepared a fraudulent Lease Purchase Agreement and a fraudulent Membership Interest Purchase Agreement, causing the Plaintiff to believe that he could develop the 108 acres as the Sellers assured him he could while collecting $85,000 from the Plaintiff as required in the fraudulent Lease Purchase Agreement.

Defendants were aware they could never honor the Lease Purchase Agreement due to the long-term (70) year multiple leases that created the defective title. It was a fraud to get the unknowing Plaintiff to buy the defuncted BWR, which had a hidden 22-million-dollar duty that was legally impossible for Plaintiff to operate since it was broke due to the Sellers stealing the family memberships who had paid into BWR about 5 million dollars.

203.    Techs., Inc., 204 F.3d 124, 130 (4th Cir.) ("[F]raud upon the court includes fraud by bribing a judge, or tampering with a jury, or fraud by an office"...

204.    **supplemental jurisdiction**

Supplemental jurisdiction is a way for federal courts to hear claims for which they would not ordinarily have jurisdiction. It only exists when a lawsuit includes more than one claim, and the federal court has valid jurisdiction (either diversity jurisdiction or federal question jurisdiction) over at least one of the claims.

205.    In that situation, if the federal claim and the other claims arise out of a "common nucleus of operative fact," then the court may (but does not have to) exercise supplemental jurisdiction to hear the other claims as well. United Mine Workers v Gibbs, 383 US 715 (1966).

206.    Reminders:

The plaintiff's ownership or right to possession of the property was never heard. Defendants blocked Plaintiff's ability to hear his case through extrinsic fraud on the courts by filing unenforceable fraudulent filings, using perjury, and abuse of authority.

207.    (2) the defendant's conversion by a wrong act or disposition of the plaintiff's property rights was never heard.

**208.  (3) damages suffered by the plaintiff were never heard.**

**209.    The plaintiff will list at the bottom the Lease Purchase Agreement and numbered exhibits showing Proof that the title was defective, cite Federal and State law as to what makes a contract/agreement unenforceable, and provide many papers that all Defendants filed electronically using and defending the void, and unenforceable Lease Purchase Agreement as valid, knowing it was not.**

**The lawyers, insurance companies, and Sellers have committed fraud, perjury, use of unenforceable agreements, and contract fraud and sued the Plaintiff when there was no probable cause. They illegally and fraudulently evicted the Plaintiff off the 108 acres with no restitution or reimbursements and committed defamation against the Plaintiff twice.**

**210.    All season attorneys know the law about what makes an unenforceable contract/agreement. Extrinsic Fraud on the Court, using unenforceable contracts/agreements as valid evidence, lack of meeting of the minds when the agreement was fraudulent and dead-on arrival, as cited in case law.**

**211.    Professional Cleaning, In. Bldg. Serv. v. Kennedy Funding**

2:05-CV-2384 (WJM) (D.N.J. Jun. 12, 2009)  Cited 7 times

364 N.J. Super. 128, 143 (N.J.Super.Ct. App. Div. 2003)). However, if the written document is unenforceable, the plaintiff may maintain an unjust enrichment claim. In re Prudential Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996). A contract induced by fraud may be considered invalid and unenforceable under the law. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (N.J. 1990). Since a question of fact exists as to Professional's fraud claim against Kennedy, it would be premature to dismiss Professional's unjust enrichment claim against the lender. Therefore, Defendants'

212.    I respectfully ask this Honorable Judge how much would a jury award the Plaintiff for losing his senior life for ( 4 ) years working every day year-round at BWR and losing an additional ( 9 ) years fighting for justice? That is a total of ( 13 ) years were taken from Plaintiff's life for only horror.  <u>This Court and Honorable Judge is my only answer and hope for justice.</u>

Rule 9 (b)

a. (1) an affirmative act of concealment and/or that the conspiracy was self-concealing; (2) reliance; and (3) due diligence with particularity under Rule 9 (b). As discuss.

b. Extrinsic fraud perpetrates an abuse of judicial process by preventing an adversary trial and /or affecting the jurisdiction of the court. Fraud prevents an adversarial trial and/or affecting the jurisdiction of the court. Fraud prevents an adversarial trial when it keeps a party ignorant and prevents them from presenting their case, as in Wells v. Wells, 168 Md. App. 382, 399-99 (2006) and Hinden v. Hinden, 184 Md. 575, 583 (1945):

81

or, as in Fleisher v. Fleisher Co., 60 Md. App. 565,571 (1984), the fraud prevents the actual dispute from being submitted to the fact finder. Extrinsic fraud can involve a false promise of compromise or an attorney who fraudulently or without authority assumes to represent a party and connives at their defeat, see United States v. Throckmorton, 98 U.S. 61, 65-66 (1878).  Only an "intentionally deceptive artifice" can reach the level of extrinsic fraud. Schwartz v. Merchant's Mortg. Co., 272 Md. 305, 308 (1974); see also Payne v. Payne, 97 Md. 678, 685 (1903).

c. Generally, a case can be filed in a federal district court only if there is diversity of citizenship under 28 U.S.C. 1332 or if there is federal question jurisdiction under 28 U.S.C. court; defamation/libel via extrinsic fraud upon the court; ( another claim of defamation/libel via extrinsic fraud upon the court; ( fraudulent concealment, and land fraud/ extrinsic fraud forcing Plaintiff to file bankruptcy; and ( denial of Plaintiff's right to be defended by insurer knowing extrinsic fraud existed. See ECF No. 1at63, 69,73, 78, 81, 82, 90, 101 and preventing Plaintiff's case of right of possession and wrongful eviction.

d. This case involves all listed items in ©, excluding diversity of citizenship. Plaintiff has more than proved his case with Defendant's wrongful actions, including defamation, fraudulent concealment, land fraud/ extrinsic fraud forcing

Plaintiff to file bankruptcy, Plaintiff's rights denied for his insurer to represent him in his defense.

e. Capers v. Kijakazi

Civil Action 3:16-01360 (W.D. La. Nov. 7, 2022)

consent to the terms of the transaction or Mr. Rankins' role in the transaction. In short, to the extent that the Declaration of Intent attempts to enlarge the terms of the Retainer Contract, it plainly transgresses all three conditions of Rule 1.8(a), per the evidence before the court. Moreover, "'[a]n attorney-client contract which directly violates a disciplinary rule is unenforceable.'" Wiener, Weiss & Madison, 971 F.3d at 516 (quoting Hodges, 103 So.3d at 1073). Accordingly, the court finds that counsel's requested 406 (b) is not authorized or reasonable under the circumstances...

213.                    AS A FIRST CAUSE OF ACTION

VIOLATION OF THE FOURTEENTH AMENDMENT BY USING EXTRINSIC FRAUD TO PREVENT PLAINTIFF'S CASES FROM BEING HEARD.

Plaintiff incorporates by reference each allegation above as if set forth below.

Count 1.  Defendant Sellers, Richard Clark, Steven Lovell, Thomas Harper Individually, Attorney Thomas Harper, Turner Padget law firm, Attorney CEO Keith Vaughan, Attorney Betty Elizabeth Temple Individually, Womble Carlyle Sandridge & Rice LLP and Attorney CEO Betty Elizabeth/Attorney Thomas Harper prepared or condoned the fraudulent Lease Purchase Agreement and the Settlement Agreement while understanding that both agreements could never be legally

honored or enforced by the Seller or Buyer making all agreements unenforceable and fraudulent, void and dead on arrival.

Count 2.  The Defendants in count (1) used extrinsic fraud on the Courts, concealment, no probable cause, malicious prosecution, contract fraud, and filing fraudulent documents to prevent the Plaintiff's case from being heard and preventing the Plaintiff's right of possession from being heard likewise.

Count 3.  Defendants named in Count (1) used the unenforceable Lease Purchase Agreement "no probable cause" factor, unenforceable Lease Purchase Agreement and Settlement Agreement, fraudulent abuse of authority while presenting all fraudulent documents, motions, and filings with the Federal Court as valid to purposely gain millions of dollars.

Count 4.  Defendants knew that the Lease Purchase Agreement and Settlement Agreement were invalid, fraudulent, void, and unenforceable because Defendants created the (740) defective titles with the family memberships.

Count 5.  These unethical, misconduct, fraudulent, and rule-breaking actions taken by Defendants caused (4) years of stress and suffering, hard work 24 hours each day, multiple judgments while at BWR, (9) years of loss of income, and loss of

(13) years of Plaintiff's senior life not being paid for Plaintiff's legal work. There is nothing frivolous about this complaint.

Count 6.  The TLC parties and their attorneys knowingly and / or negligently failed to record the family memberships encumbering the property as required by statute and hid from revealing the encumbrances upon the property before Plaintiff Hutson executed the Lease Purchase Agreement.

Count 7.  The defendants intentionally committed these wrongs to harm the Plaintiff in every way possible out of greed and plotting.

Count 8.  Sellers and their attorneys, Tom Harper et al., did not disclose that the family memberships caused two lifetimes of defective title 740 times. This was concealed from Plaintiff from 2010 until today.

Count 9. This Court has the power to relieve the Plaintiff by sending this fraudulent case to a Federal Jury for restitution, including punitive and tort damages.

214.                    **AS A SECOND CAUSE OF ACTION**

## DEFENDANTS' KNOWINGLY USE of UNENFORCEABLE AGREEMENTS

Plaintiff incorporates by reference each allegation above as if set forth below.

Count 1.  All the Defendants intentionally used the unenforceable, void, and worthless Lease Purchase Agreement and Settlement Agreement as legitimate and valid evidence when, according to cited law, the Agreements were fraudulent and unenforceable so Sellers could not sell with good title, preventing Buying and developing by the Plaintiff.

Count 2.  The Settlement Agreement and Lease Purchase Agreement were unenforceable, void, and worthless also since both required Plaintiff to buy the same 108 acres harnessed with the defective title due to the 740 long-term "sole right of use" up to ( 70 ) years family memberships.

Count 3.  Both the Lease Purchase Agreement and the Settlement Agreement were worthless, void, and unenforceable. Sellers were still trying to require Plaintiff to buy land, including fraudulently suing Plaintiff for default, since Plaintiff could not buy the 108 acres due to full defective title and the defuncted BWR.

Count 4. BWR is being defuncted, the huge 22-million-dollar hidden duty, and the fatal defective title have been discreetly concealed from Plaintiff until now.

86

Defendants are liable to the Plaintiff for actual, incidental, consequential, special, and punitive damages, all in an amount to be determined by a Jury trial and the trier of fact.

Count 5.  Defendants required the Plaintiff to appear for multiple depositions without authority or probable cause.  All Defendants use malicious prosecution and extrinsic fraud in the courts, preventing Plaintiff's case from being heard and permanently damaging Plaintiff.

Count 6.  Defendants blocked Plaintiff's ability to hear his case by filing false documents and using extrinsic fraud in the Federal, Appellate, and State Courts.

Count 7.  All Turner Padget Defendants fraudulently filed for 14,900 dollars in sanctions to the Honorable David Norton, knowing full well they failed to disclose the truth and facts to the Judge regarding the voided Agreements while using the voided Agreements as their sole evidence.

The Defendants aimed to get the Plaintiff off their back in their endless search for ways to escape justice.

Count 8.  All Defendants understood that the Lease Purchase Agreement was deliberately prepared to defraud and lure Plaintiff into Purchasing the defuncted BWR LLC.

Count 9.  Defendants' wrongful and fraudulent actions against Plaintiff were to hurt, harm, legally destroy, and damage, using Plaintiff as their scapegoat to win about 2,000,000 dollars in real money and get a judgment against this innocent Plaintiff for 3.5 million. Both were fraudulently done.

Count 10.  Attorney Thomas Harper and his entire group filed false, fraudulent, unenforceable papers ( Lease Purchase Agreement and Settlement Agreement ) as evidence in the Federal Bankruptcy Court, case number 14-00165-JW, on 01/24/2014 to purposely get the Plaintiff thrown out fraudulently.

Count 11.  This Court needs to give relief and restitution to this Plaintiff for 4 years of constant work at BWR and 9 years of suffering while still seeking legal justice, working every day regarding this endless matter.  A federal jury must also hear questions regarding possession and illegal eviction.

Count 12.  The defendant's failure to reveal the fraudulent Lease Purchase Agreement caused the Plaintiff to buy the defuncted BWR and then severely sued. Plaintiff remains damaged as this case is filed.

Count 13. BWR had a hidden 22-million-dollar duty for (70) years due to the family memberships. Hidden to the Plaintiff, BWR lost $325,000 yearly, multiplied by ( 70

years), which equals 22.7 million dollars. There was no way for BWR to increase its income base of the "sole right of use" provision.

Count 14. The sellers and their attorneys were well-versed in the fact that they could not sell the 108 acres to the plaintiff because they did not have good title.

Count 15. These frauds were purposely committed to relieve obligations from Sellers, requiring Plaintiff to become responsible for a defuncted helpless, indebted BWR for ( 70 ) years, which was legally impossible.

215.                              AS A THIRD CAUSE OF ACTION

MISCELLANEOUS CAUSE OF ACTIONS

Plaintiff incorporates by reference each allegation above as if set forth below.

Count 1. All Defendant Attorneys should be severely sanctioned for each individual fraudulent act ( against this Plaintiff and Court ), including all false allegations, including the use of void, unenforceable, and worthless Lease Purchase Agreement and Settlement Agreement prepared by Seller's attorney Thomas Harper.

**Count 2. Defendants should legally remove all judgments and orders made wrongfully against Plaintiff starting in 2011 in State and Federal Court.**

**Count 3. In addition to restitution, the Defendants should have to write a detailed apology letter to this plaintiff for all wrongful actions since 2011. All Defendant attorneys grossly violated their 402 K oath and should be sanctioned likewise.**

**Count 4. Defendants have committed extrinsic fraud on the Courts, Malicious Prosecution, Abuse of Authority, Contract Fraud, Failure to reveal, Concealment, Conspiracy, complicity, Corruption, intentional Tort, and Defamation against Plaintiff and the Courts.**

**Count 5. Defendants lured the Plaintiff from out of state to the 108 acres in South Carolina via a fraudulent, void, unenforceable, and worthless Lease Purchase Agreement for long-term greed and corruption.**

**Count 6. Defendants purposely lured Plaintiff onto the 108 acres to defraud and trap Plaintiff into buying the 740 up to (70) year long-term Family leases to dump the hidden 22-million-dollar duty on Plaintiff. Sellers never intended to sell the 108 acres to Plaintiff.**

90

Count 7. Defendants continued to belittle and complain about Plaintiff to protect themselves from being illegally discovered.

Count 8. Sellers and their attorneys concealed the bad truth, which was that they had orchestrated a setup and trap. These actions were concealed from the Plaintiff and all judges, which is why the Plaintiff lost all hearings and cases.

Count 9. When the Defendants evicted the Plaintiff, there was no probable cause. The plaintiff had been fraudulently lured onto the property, and the Defendants used fraud, perjury, misrepresentation, and void and unenforceable agreements to fraudulently evict the Plaintiff, violating the Plaintiff's 14th Amendment of the Constitution.

Count 10. The plaintiff should not have been fraudulently removed/evicted when the Plaintiff was not trespassing.

Count 11. The plaintiff was severely damaged when fraudulently evicted while Plaintiff had full possession through contract fraud.

Count 12. The defendants had to provide restitution to the injured Plaintiff to make him whole before getting the Plaintiff to vacate the 108 acres. The defendants continued to sue and violate this innocent Plaintiff for (10) years.

91

Count 13.   The plaintiff prays for justice and pleads with Judge Cherry to send this unfair, outrageous, fraudulent, and corrupt case to a jury.

Count 14. The plaintiff has copies of $23,300.00 of checks the bank gave showing payments to Sellers for the right to have the Lease Purchase Agreement, which is fraudulent and worthless. Attached Exhibits show the checks.

Count 15.   The plaintiff paid $85,000.00 to the Sellers for the unsuspecting void and unenforceable Lease Purchase Agreement. The plaintiff plans to submit more copies of checks paid to Sellers and will file them as soon as they are available.

Count 16.   Defendant Clark, Lovell, Ocoee, LLC, TLC Holdings, LLC and Big Water Resort, LLC violated S.C. Code Ann. 27-32-80 by leasing or otherwise transferring ownership of the lease agreements accommodations and facilities at Big Water Resort to Plaintiff or Ocoee, LLC without the capital accounts and funding from membership dues necessary to operate the resort for two lifetimes.

Count 17. Defendants Clark, Lovell, TLC Holdings, and Big Water Resorts, LLC sold to Plaintiff the BWR campground, where camping memberships had two

lifetimes of "sole use," and intentionally refused to give BWR / Hutson a two-lifetime lease on the 108 acres to honor the 740 memberships making it legally impossible to comply with the lease agreements.

Count 18. The defendants never disclosed to the Plaintiff or any federal or state judge that the Plaintiff was doomed regarding BWR.  Plaintiff remains damaged and in great need to this Honorable Court and Judge.

216.    PRAYER to the Honorable Judge Cherry.

217.    The plaintiff prays for help since he is prose and should not be expected to produce the same quality of pleadings or cause of actions for he does not have the ability.  However, the plaintiff has the simple truth of evidence and facts attached, providing total proof of the Defendant's guilt.

218.    Plaintiff asks The Honorable Judge Cherry to let Plaintiff bring his State Jury Trial Defamation ( case number 2015cp1400615 dated 12/07 2015 )    Federal Workers v Gibbs 383 US 715 (1966 ) charging Defendants for false allegations against Plaintiff using known extrinsic fraud on Courts, jury and Judge, fraud on Plaintiff, perjury, concealment, extrinsic fraud on the Court and jury tampering.   This case has all the violations and patterns this Federal complaint alleges and has.

Please allow the State case jury trial ( 2015cp1400615, dated January 26, 2018 ) to be tried with this Federal Court case.  If not, remove this separate request and allow the other allegation, complaint, and prayers to proceed.  About eight defendants in the state jury trial are the same wrongdoers as in this federal complaint, continuing the same use pattern.

219.   a. Should the Plaintiff be allowed to bring into this Federal case the State Court case number 2015cp1400615, dated 12/07 2015, fraudulent defamation case in which most Defendants helped to prosecute the fraudulent jury trial case against the Plaintiff?

b. The Defendants in the jury trial State case were Richard Clark, Steve Lovell, Wayne Byrd, John Wilkerson, Carlyle Richardson Cromer, Turner Padget, William Johnson, Timothy Newton, Murphy Grantland, John Grantland, J.R. Murphy committed jury tampering, fraud upon the Courts, concealment, conspiracy, use of Lease Purchase Agreement, Frank Gordon, Millberg Gordon Stewart costing Plaintiff a 3.5-million-dollar judgment obtained via fraud, extrinsic fraud, costing Plaintiff to be smeared with a 3.5 million dollar defamation conviction for life.

c. Defendants used concealment, failure to reveal active known fraud, obstruction of justice, contract fraud, and plotted fraud to the Judge and jury of Clarendon County to accomplish the judgment.

d. All Defendants have developed a pattern of wrongdoings that violate Federal, Appellate, or State laws, as cited in this complaint. They need to be stopped, exposed, and punished financially. It would be an injustice for these Defendants to get away with this damaging plotted and actual fraud.

e. Allow this case to become part of Plaintiff's federal case so a federal jury can hear and appreciate how rampant and lawless these Defendants are. This is so easy to prove yet serious, same Defendants and the same pattern of a fraudulent operation to cheat, smear, and destroy this Plaintiff financially.

94

f. If the Plaintiff may bring in the State Jury Trial fraud case easy to prove, allow the Plaintiff a short period to prepare the cause of actions to be submitted and or an amended Complaint to cover the bases regarding this matter.

220.    Grant exceptions to the Normal Cap on Punitive Damages, ALLOWING SPECIAL CONSIDERATION TO THIS INDIGENT PRO SE SINCE THIS GLOBAL NUMBER OF FRAUDS AND VIOLATIONS are SO SERIOUS, HEINOUS, deliberate, and illegal CONDUCT. The plaintiff can only hope that the public will not see these horrible lawyers succeed without being caught by this honorable judge and jury.

221.    The plaintiff reminds this Court that the defendants intentionally blocked and violated the plaintiff's case by engaging in extrinsic fraud on the Judges, using unenforceable agreements, lacking probable cause, and denying the Plaintiff's right to have his case heard while hiding and concealing their acts of extrinsic fraud on the Courts, Judges, and Plaintiff.  Allow this case to move forward to a jury trial.

222.    The plaintiff asks that all documents, exhibits, and any additional paperwork submitted by the Plaintiff be allowed to be useable, including those submitted to a jury. This includes a copy of the State jury trial that was fraudulent and plotted.

223.    With more than overwhelming evidence, the plaintiff asks that this case move in a fast-track method due to the Plaintiff's age and physical condition. The plaintiff respectfully asks that the Honorable Judge Cherry carefully review this complaint herself. The plaintiff prays that nothing would justify a dismissal, for the Plaintiff has

spent three months preparing this complaint. The plaintiff is not a skilled, dishonest lawyer like the Defendants are.

224.    Plaintiff REMINDS this Court that the "Defendants started this fraudulent" plan and scam of extrinsic fraud on the court, using the fraudulent Lease Purchase Agreement, Settlement Agreement, unenforceable, void, dead evidence, abuse of authority, fraudulent eviction, and obstruction of justice to defraud this innocent Plaintiff in December 2010 until now. Among many other disgraceful acts, the Defendants have stolen over nine ( 13 ) years of senior life from this Plaintiff.

    a. Attorney Thomas Harper, Attorney Wayne Byrd, Seller Richard U. Clark, and Steven Lovell were the original inventors of all fraud against the innocent Plaintiff. All other Defendants were direct followers and comparators who were totally complicit in destroying and financially ruining this Plaintiff for personal reasons and financial gain. The Defendants were corrupt and brave, fearing no Judge or Court nor Plaintiff.

225.    The plaintiff asks that this Court appreciate that the Plaintiff is not a skilled, trained, licensed, or seasoned attorney who greatly needs restitution.

226. After filing this complaint, the plaintiff will move for sanctions using Federal Rule 11, 11b.c. Plaintiff will ask for sanctions to be paid to Plaintiff, which will be considered no type of consideration towards any restitution or settlement.

227.    Plaintiff asks that he not be charged for US Marshalls to serve Summons and

Complaint if Plaintiff will be charged.  The plaintiff's income is only through S.S. The

plaintiff may have to get some free help from outsiders to conduct service but is

willing to do so.

228.    Once the case is assigned a case number, the plaintiff asks for directions from

the Court regarding the charge for the U.S. Marshal to serve this complaint.

229.    All papers and documents filed now and will be used in court and in front of a

jury.

230.    Defendants used fraudulent concealment, which "tolls" the application of the

statute of limitations. When a defendant has concealed his misconduct, the

limitations period does not begin to run until after the plaintiff discovers, or with due

diligence should have discovered, his claim against the Defendants.  See Hunt v.

Bittman 482 F. Supp, 1017, 1022 (D.D.C. 1980).

a. To benefit from the equitable tolling doctrine, Plaintiff must prove: "(1) that

the defendant actively misled the plaintiff; (2) which prevented the plaintiff from

recognizing the validity of her claim within the limitations period; and (3) where the

plaintiff's ignorance is not attributable to her lack of reasonable due diligence in

97

attempting to uncover the relevant facts." *Id*. at 509. Plaintiff has proved the tolling doctrine.

231.    Plaintiff states he had discovered ( about May 10, 2024 ) that the Defendants had used the fraudulent, worthless, and void Lease Purchase Agreements to win all cases when the Agreement was unenforceable, void, and worthless as they well understood.

232.    No one had ever shared that fraud with this Plaintiff. This Court can most likely appreciate how secretly Defendants have been about using the Lease Purchase Agreement, void, and worthlessness. At the same time, they boastfully and without fear of the Honorable Judges declare that the Lease Purchase Agreement is valid and have used the same hundreds of times in Federal, Appellate, and State Courts filings. All lawyers are trained to understand what an unenforceable, void agreement is.

   a. Pro se is not trained, and Pro se has contacted over (50) lawyers who would not take this case due to fellow attorney relationships.

   b. How can a person be in default of an unenforceable, void, and fraudulent agreement that Defendants prepared? This plaintiff needs to be sent to a Federal Jury.

233.    a. So important: Plaintiff specifically asks that all papers, motions, responses, pleading, or any other filings, including live hearings or jury trials, all Defendants will be limited to the Plaintiff's complaint, including exhibits.

b. The only hope for these dishonest lawyers to be cunning Defendants they will plan to file hundreds of different subject matters, trying to throw the sitting judge into a state of confusion. The Plaintiff's case is only about what he has written, described, outlined, labeled, and presented in this case. Plaintiff's complaint lays out all wrongful, fraudulent conduct Defendants have committed, and neither Plaintiff nor Defendants should be allowed to bring up third matter subjects.

c. These lawyers are polished to dance around while bringing in unrelated matters unrelated to this direct complaint. I ask Judge Cherry to be especially on watch and guard for this and stop it before it starts, add unimportant information to confuse and change the subject, including written distractions. Disallow such actions. These lawyers are caught, so they will dance, distract, and confuse the Honorable Judge. Since all lawyers have broken their Oaths, Plaintiff especially asks that all Defendants be sworn in even though they have committed much perjury as the evidence of exhibits proves.

d. These lawyers will play games with your honor, for they have no respect for Judges or honesty with judges, committed perjury upon the Judges, misrepresentation

and extrinsic fraud upon the judges, obstructed justice from the Plaintiff's case intentionally, twisted, and lied in every way possible. Defendants' filings prove what Plaintiff is stating.

234.   Dismiss with prejudice any claims filed by the Defendants.

235.   Enter judgment for the Plaintiff and against Defendants.

236.   Find that the Defendants knowingly engaged in unfair trade practices, entitling the Plaintiff to treble damages or more.

237.   So this victim/Plaintiff prays this honorable court:

   a.   Investigate and remand this case to a jury, for this case has many probable causes.

   b.   Refuse to allow Defendants further involvement in this case due to their extraordinary Extrinsic Fraud upon the Court ( no court should associate with officers of the court committing pre-planned and intentional fraud ) and

   c.   Deny any motions for sanctions against Plaintiff as Defendant's actions are intentionally illegal before the Honorable Court.

_Morris Beach Hutson_ (signature)

I respectfully submit this on ~~July 2024.~~ Aug 1, 2024

Morris Beach Hutson
1545 Biltmore Street
Orangeburg, South Carolina 29115
803 308 2714   Hmr226621@gmail.com


The plaintiff now shows and lists his exhibits by numbers as follows. The reason Plaintiff has waited until the last part of his complaint to show is due to:


    a. The fraudulent, void, worthless Lease Purchase Agreement has been cited by law within this complaint as unenforceable, void, dead on arrival because the Sellers could not sell nor Plaintiff could not legally buy due to the (70) year defective title caused by Sellers entering into long-term leases for "sole right of use" with 740 family members who had prepaid about 5 million dollars to BWR LLC controlled by Richard Clark, Steve Lovell, and TLC Holdings, LLC.


    b. The Defendants have so many written proofs and filings using the unenforceable and void Lease Purchase Agreement as valid evidence that the Plaintiff

thought it best to list only twenty or thirty of the same fraudulent acts instead of hundreds.

     c. Each time any Defendant cites and uses the Lease Purchase Agreement as valid, please know that each Attorney Defendant understands the definition of an unenforceable contract or agreement. There was never a meeting of the minds since neither the Seller nor the Buyer could legally perform. This Agreement was purposely prepared to be fraudulent.

     d. The Defendants used the Lease Purchase Agreement as their sole fraudulent evidence to win their Federal, Appellate, and State Court cases.

     e. Had Defendants not used the Lease Purchase Agreement (as valid evidence) in their motions, pleadings, legal arguments, motions for sanctions, history, first presentations, defense, and defamation in their lawsuit, they would have had no case.

     f. All judges would have thrown out or dismissed their actions in the Plaintiff's favor. This entire legal and moral nightmare was resurrected intentionally to defraud, stealing, causing harm, and transferring the duty of honoring the family members' long-term leases that the Sellers wanted off their backs since the Sellers had stolen the family memberships 5 million dollars. Now, BWR LLC was broke and

defuncted, with a duty of 22 million dollars outstanding, and Sellers needed a scapegoat to be legally slaughtered by taking all of the blame as the new owner.

g. All Defendants understood that the Lease Purchase Agreement was invalid and dead because it was fraudulent the moment it was executed, but the Plaintiff was unaware of this.

h. There was no probable cause, and the Sellers did not have the right to evict the Plaintiff when he had full possession of the 108 acres until the Plaintiff was properly and legally paid restitution.

The Sellers fraudulently lured this innocent Plaintiff onto the property for four years and evicted him with no legal probable cause due to their perpetrated fraud. The sellers and their attorneys understood that they could not sell the property nor comply with the Lease Purchase Agreement they had prepared.

I. How can a Plaintiff be in default to an unenforceable, void, fraudulent agreement?

j. Defendants had no choice but to argue that there was no extrinsic fraud; otherwise, they were caught conducting the extrinsic fraud that Plaintiff accused them of. Plaintiff understands that the Defendants' method of winning everything in arguments, briefs, motions, and live hearings is using the fraudulent, unenforceable,

103

void, and worthless Lease Purchase Agreement and the void Settlement Agreement prepared by Sellers and their attorneys to defeat and ruin Plaintiff.

k. Defendants were so afraid that Plaintiff would someday figure out that the Lease Purchase Agreement, which was worthless and void, and the Membership Interest Purchase Agreement were fraudulent since the long-term membership families had no sublease agreement from TLC allowing them and Plaintiff the legal right to use the 108 acres of property to try to honor the two lifetimes.

The 70–year memberships and the fraudulent void Settlement Agreement were void and unenforceable because the agreement required the Plaintiff to buy the 108 acres that could not be purchased due to the family member title.

Still, the Defendants made it their most winning tool to constantly defeat the Plaintiff even though the Plaintiff had done nothing wrong.

l. It was hard for Plaintiff to determine what malicious prosecution meant, for Plaintiff had never heard of it.  The plaintiff's exhibits prove that Defendants used perjury, abuse of authority, and using void and unenforceable evidence as valid to Federal, Appellate, and State Courts.

m. Defendants understood that they were lying, deceiving, cheating, misrepresenting, falsifying all filings, and signing their names to fraudulent filings to trick and con Federal, Appellate, and State Judges.

n. This must be stopped. These <u>Lawyers are caught with this solid proof</u> conning Federal, Appellate, and State judges and Plaintiffs.

I swear that I will serve each Defendant once I receive my notice/approval, including proof of service unless the US Marshall handles service.

Thomas Harper individually. 5 Exchange Street, Charleston S.C. 29401

Attorney Thomas Harper Esq. 5 Exchange Street, Charleston S.C. 29401

Betty Elizabeth Temple individually 550 South Main Street suite 400, Greenville, South Carolina 29601

Attorney Betty Elizabeth Temple Esq. 550 South Main Street suite 400, Greenville S.C. 29601

Charles Summerall individually. 66 Hasell St. Charleston S.C. 29401

Attorney Charles Summerall, Esq. 66 Hassell St. Charleston S.C. 29401

Carlyle Sandridge & Rice LLP. 5 Exchange Street, Charleston S.C. 29401

Attorney Keith Vaughan. 5 Exchange Street, Charleston S.C. 29401

**Elected to be CEO Merrick Benn** 100 Light St. 26th Floor Baltimore, MD 21202


**John Wilkerson individually.** 40 Calhoun Street, Charleston S.C. 29401

**Attorney John Wilkerson, Esq.** 40 Calhoun Street, Charleston S.C. 29401

**Turner Padget, Graham & Laney P.A.** 40 Calhoun Street, Charleston S.C. 29401
**Carlyle Richardson Cromer individually** 1000 E. Hanes Mill Road, Winston Salem, N.C. 227105

**Carlyle Richardson Cromer, Esq.** 1000 E. Hanes Mill Road, Winston Salem, N.C. 227105

**CEO Pierce Campbell individually** 1831 West Evans Street Suite 400 Florence, S.C. 29501

**Attorney Pierce Campbell** 1831 West Evans Street Suite 400 Florence, S.C. 29501

**Timothy J. Newton individually.** 4406B Forest Dr, Columbia, SC 29206

**Attorney Timothy J. Newton, Esq.** 4406B Forest Dr, Columbia, SC 29206

**John Grantland Individually.** 4406B Forest Dr, Columbia, SC 29206

**Attorney John Grantland, Esq.** 4406B Forest Dr, Columbia, SC 29206

**Murphy Grantland Law firm.** 4406B Forest Dr, Columbia, SC 29206

**J.R. Murphy individually.** 4406B Forest Dr, Columbia, SC 29206

**Attorney J.R. Murphy, Esq.** 4406B Forest Dr, Columbia, SC 29206

**CEO Christian Stegmaier individually.** 1330 Lady St 6th floor, Columbia, SC 29201

**Attorney Christian Stegmaier, Esq.** 1330 Lady St 6th floor, Columbia, SC 29201

**Laura Baer individually 1330** Lady St 6th floor, Columbia, SC 29201

**Attorney Laura Baer, Esq.** 1330 Lady St 6th floor, Columbia, SC 29201

106

**Collins and Lacy** 1330 Lady St 6th floor, Columbia, SC 2920

**Frank J. Gordon individually.**    1101 Haynes St. #104, Raleigh, NC 27604

**Attorney Frank J. Gordon, Esq.** 1101 Haynes St. #104, Raleigh, NC 27604

**Millberg Gordon Stewart PLLC.** 1101 Haynes St. #104, Raleigh, NC 27604

**Seller Richard U. Clark individually CO Attorney Michael Crowder 550 West Main Street, suite 400, Knoxville, Tn. 37902, TLC Holdings, LLC, Ocoee, LLC,**

**Partner Steven J. Lovell 3124 Great Wood Way, Knoxville, Tennessee 37922**

**Seller Steven Lovell Individually,** Partner Steven J. Lovell 3124 Great Wood Way,  Knoxville, Tennessee 37922.  Not sure of this address of Steve Lovell.  That is the last address I have.

**TLC Holdings, LLC.** TLC Holding, LLC, Lovell 3124 Great Wood Way, Knoxville, Tennessee 37922

**Penn America Insurance Company.** Three Bala Plaza East, Suite 300 Bala Cynwyd, P.A. 19004

**Global Indemnity Insurance Company Three** Bala Plaza East, Suite 300 Bala Cynwyd, P.A. 19004

**Paul Weissenstein individually.** Esq 106 Broad St, Sumter, SC 29150

**Attorney Paul Weissenstein,** Esq  106 Broad St, Sumter, SC 29150

**Paul Weissenstein Law Firm.** Esq  106 Broad St, Sumter, SC 2915

**Attorney Raymond Steven Kropski Esq.** 878 Whipple Rd, Mt Pleasant, SC 29464

**Earhart Overstreet, LLC.** 878 Whipple Rd, Mt Pleasant, SC 29464

**Attorney William Johnson.** 411 N. Brooks St. Manning, SC 29102. Clarendon

**Note: Using unenforceable agreements as evidence and extrinsic fraud on the Courts tricked the Courts and the Plaintiff, causing an unjust, one-sided win for Defendants**

107

regarding all cases, motions, briefs, and hearings. These actions were and are obstruction of justice.

Plaintiff has provided all Defendants' Summons, Complaint, and proof of service. A Cover Sheet is attached, as are many exhibits within this Complaint, including 26.01 interrogatories.